UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES FRALEY**, | 4:16-CV-14465-TGB |
| Plaintiff, | **ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE PLAINTIFF'S AMENDED AND SUPPLEMENTAL COMPLAINT** |
| vs. | |
| **GENERAL MOTORS, LLC**, | |
| Defendant. | |

Before the Court is Plaintiff's Motion for Leave to File Amended and Supplemental Complaint. ECF No. 29. For the reasons stated herein, the motion is **DENIED IN PART** and **GRANTED IN PART**. Further, the Court will direct Defendant General Motors, LLC to supplement the Administrative Record with those documents to which the parties have stipulated.

## I. Background

Plaintiff Charles Fraley was an engineer employed by Defendant General Motors, LLC ("GM") until he developed a disability which prevented him from working. Plaintiff's Original Complaint, ECF No. 1, PageID.2–3. Plaintiff applied for, and was granted, Social Security Disability Insurance benefits ("SSDI"), and Defendant also granted

1

Plaintiff "Sickness and Accident Benefits," ("S&A") along with "Extended Disability Benefits," ("EDB"). ECF No. 1, PageID.3. But Defendant did not approve other benefits to which Plaintiff believed he was entitled, and so Plaintiff filed this lawsuit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., asserting claims for (1) Life Insurance; (2) Health Care Coverage; (3) Continuation of health insurance coverage under COBRA ("Consolidated Omnibus Budget Reconciliation Act"); and (4) Request for Documents.  ECF No. 1, PageID.3-11. Defendants filed an Answer with affirmative defenses on January 27, 2017. ECF No. 4.

On May 31, 2017, Defendant filed the Administrative Record consisting of nearly 1,000 pages including plan documents and administrative records. ECF No. 6. On July 28, 2017, Plaintiff filed a "Motion for Remand to Supplement the Administrative Record," contending that the record was incomplete, and seeking to remand to the administrator to supplement the administrative record. ECF No. 8. To adequately consider this motion, the Court suspended its standard scheduling order that applies to ERISA cases while it considered Plaintiff's motion. ECF Nos. 10, & 11; Sept. 13, 2017 Text Only Order.

After reviewing arguments from both parties (ECF Nos. 8 & 12), the Court denied Plaintiff's request. ECF No. 13. In its Opinion and Order, this Court observed that Plaintiff never raised a claim of "administrator bias" or of "procedural deficiency." ECF No. 13,

PageID.1070–1071. The Court further noted that, per the Sixth Circuit, a complainant "cannot 'simply on a hunch' compel [Defendant] to produce documents that either do not exist or were not included in the administrative record in the ordinary course of [Defendant's] business." ECF No. 13, PageID.1070 (quoting *Likas v. Life Ins. Co. of North America*, 222 Fed. Appx. 481, 485 (6th Cir. 2007) (unpublished case) (internal citations omitted)). The Court found that Plaintiff had failed to present any evidence to suggest that the records they sought existed in this case or were improperly omitted. ECF No. 13, PageID.1072–1073. The Court held that it would be able to review this matter based solely on the existing administrative record. ECF No. 13, PageID.1072.

During a telephonic conference held on January 17, 2018 with counsel for both sides, counsel for Plaintiff requested leave to withdraw as counsel. This motion was granted. ECF No. 14. On February 15, 2018, new counsel for Plaintiff filed notice of appearance, and took over litigation of this case. ECF No. 15.

Subsequently, Plaintiff filed the instant Motion to Amend and Correct the Complaint, alleging that, while this case began as an ERISA action, there were grounds to support adding other claims and new defendants because the Administrative Record, Plaintiff alleged, was fraudulently redacted. ECF No. 29. In the amended complaint, Plaintiff seeks to:

- add Sedgwick Claims Management Services, Inc. ("Sedgwick") and Fidelity & Guaranty Life Insurance Co., Inc. ("Fidelity") as defendants;
- add 11 new claims
- add 20 "John and Jane Doe" defendants;
- request additional statutory relief under the new claims, a host of other sanctions, equitable relief, punitive damages, etc.; and
- reorganize and replead his original claims for health care coverage, COBRA violations, a failure to provide requested documents, and denial of life insurance benefits.

On May 2, 2019, the Court held a hearing on Plaintiff's motion to amend the complaint. At that hearing, Plaintiff indicated that he had in his possession numerous documents that should have been included in the Administrative Record (ECF No. 6) provided to the Court by the plan administrator but were not included; namely, "automated letters acknowledging Plaintiff's calls made in the manner proscribed by the plan to get COBRA coverage." ECF No 29, PageID.2443. Counsel for Defendant agreed to review the documents identified by Plaintiff and the Court ordered the parties to meet and confer over whether the Administrative Record could be supplemented to include additional materials. ECF No. 36. In September 2019, the parties filed supplemental briefs regarding the Administrative Record. ECF Nos. 43-

44. The Court also held a telephonic conference with the parties regarding the supplemental briefs.

In its brief, Defendant asserted that of the non-duplicative documents that Plaintiff sought to add to the Administrative Record, many are documents related to Plaintiff's approved claims for Sick & Accident Benefits ("S&A"), Extended Disability Benefits ("EDB"), and Total and Permanent Disability benefits ("TPD"). ECF No. 43, PageID.2621. Defendant contends these documents relate to claims in Plaintiff's proposed amended complaint (ECF No. 29-2) rather than claims in Plaintiff's original complaint (ECF No. 1). As these documents were not before the claim administrator at the time of its final decision—because they did not involve denied benefits—Defendant contends they should not be added to the current Administrative Record. ECF No. 43, PageID.2621. Conversely, Plaintiff argues S&A, EDB, and TPD documents are relevant to determining Fraley's eligibility for life insurance (Count I of Plaintiff's original complaint) because the Summary Plan Description ("SPD") provides that Basic Life Insurance will be continued at no cost to Plaintiff while he is totally disabled up to age 65. *See* Original Complaint, ECF No. 1, PageID.4-5.

GM also identified four documents (dated March 21, 2016, March 31, 2016, July 26, 2017, and January 31, 2018). ECF No. 43, PageID.2622. Because these documents were generated after the claim administrator rendered its decision, they could not have been considered

by the claim administrator, and Defendant contends that therefore they should not be supplemented into the Administrative Record. *Id.* Finally, Defendant acknowledged a set of non-duplicative documents, consisting of 38 pages, that it agrees may be added to the record "in order to resolve this dispute regarding the Administrative Record." *Id.*

District courts, when asked to review a Plan Administrator's denial of ERISA benefits, should conduct a review "based solely upon the administrative record." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). They generally should not consider "evidence not presented to the plan administrator." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). "The only exception to the . . . principle of not receiving new evidence at the district court level arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618.

Fraley's original complaint does not explicitly allege a lack of due process or administrator bias, but it does allege that GM repeatedly denied Plaintiff's requests for documents related to his COBRA and other ERISA eligibility. ECF No. 1, PageID.9-10. This included "all communications" such as "electronic and paper correspondence," "records of telephone calls made to and from GM Benefits & Services" and "all notations" made by GM representatives concerning these calls. *Id.*

Allegations in Plaintiff's proposed amended complaint with respect to Counts 1 – 4 expand on these allegations by contending that the Plan Administrator failed to consider these communications when determining whether Fraley should be extended the requested ERISA benefits and that GM failed to give him proper notice that he would not receive COBRA coverage. *See* ECF No. 29-2, PageID.2472. Plaintiff also alleges that GM's Plan Administrator did not respond to his administrative appeal with respect to his request for COBRA coverage. *Id.* at PageID.2471. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) ("In reviewing a *final* decision, this court must consider what occurred during the administrative appeals process. The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.").

The Court finds these allegations sufficient to support a procedural due process challenge to GM's denial of ERISA, and that accordingly some supplementation of the Administrative Record may be permitted with respect to the 38 pages to which the parties have stipulated. *See Jones v. Iron Workers Local 25 Pension Fund*, 2014 WL 12775664, at *6 (E.D. Mich. Aug. 15, 2014) ("The following have been found to violate due process [in ERISA cases]: the lack of information of factual basis used to support a denial of benefits; failure to state specific reasons for denial of claim; failure to notify claimant of appeal procedures; and, failure to provide a reasonable opportunity for a full and fair review of decision.").

The Court therefore **ORDERS** Defendant to supplement the Administrative Record by filing the agreed-to 38 pages.[1]

As for the remaining documents, the Court concludes that supplementation is not warranted. Plaintiff contends that these additional documents are relevant to the new claims alleged in his proposed amended complaint, specifically claims for interference with EDB benefits. But these claims, as explained further below, are not adequately pled and are therefore futile. Plaintiff also argues that additional documents relating to S&A, EDB, and TPD benefits are relevant to determining Fraley's eligibility for life insurance (Count I of Plaintiff's original complaint) because the SPD provides that Basic Life Insurance will be continued at no cost to Plaintiff while he is totally disabled up to age 65. ECF No. 44, PageID.2627 (referencing a "Plaintiff's exhibit 7" that was attached to a previously stricken motion for summary judgment); *see* ECF No. 16-6. However, as explained above, ERISA claims are closely regulated; federal district courts may only consider items in the Administrative Record unless the plaintiff has asserted a procedural challenge to the administrator's decision. *See Perry v. Simplicity Engineering, a Div. of Lukens Gen. Indus., Inc.*, 900 F.2d 963, 966 (6th

---

[1] Because Plaintiff is not requesting that GM turn over additional discovery to prove a due process violation, the Court need not engage in a full *Wilkins* analysis. Rather, Plaintiff merely seeks to supplement the Administrative Record with additional documents in his possession. *See Jones v. Iron Workers Local 25 Pension Fund*, No. 14-10031, 2014 WL 12775664, at *4-5 (E.D. Mich. Aug. 15, 2014).

Cir. 1990). With respect to these additional documents related to S&A, EDB, and TPD benefits, the Court concludes that Plaintiff has not adequately shown that they are relevant to his procedural challenge to the Plan Administrator's decision and therefore will not be supplemented.

Further, in the event that the Court might conclude on the merits of Plaintiff's claims that he was improperly denied ERISA benefits and that the Plan Administrator's decision suffered from a procedural defect or was factually incomplete, then the Court could remand to the *Plan Administrator* to allow consideration of any additional documents that were not part of the Administrative Record. *See Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009). But where, as here, the Court is ruling on Plaintiff's pending motion to amend his complaint—and not a motion for remand, or on the merits of Plaintiff's ERISA claims that he was improperly denied benefits—the Court will not permit supplementation of the Administrative Record with respect to those additional documents. If it is later determined that the Plan Administrator erroneously denied benefits, the appropriate remedy—whether remand to the Plan Administrator to consider those documents, or an award of benefits—will be determined at that time. *See Shelby Cty. Health Care Corp.*, 581 F.3d at 373-74.

Consequently, for the reasons expressed above, the Court will permit supplementation of the Administrative Record as to those 38

documents to which the parties have stipulated. No other supplementation will be allowed at this time.

## II. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that a court may freely grant leave to amend a pleading when justice so requires, in order to ensure that a case is tried on its merits "rather than [on] the technicalities of the pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). Here, Defendant GM opposes Plaintiff's motion to amend as futile. ECF No. 31, PageID.2525. An amendment is futile if it would be subject to dismissal upon a motion to dismiss. *See Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1124 (6th Cir. 1989).

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint *and* are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added).

A plaintiff may also move to supplement her complaint pursuant to Fed. R. Civ. P. 15(d): "On a motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "Therefore, a motion to supplement, as opposed to one to amend, seeks to add allegations pertaining to events arising after the original complaint was filed." *Mitchell v. Clayton*, 2014 WL 186026, at *1 (E.D. Mich. Jan. 16, 2014) (citing *Murphy v. Genier*, 2009 WL 1044832, at *19 (E.D. Mich. Apr. 20, 2009)). "Moreover, like amendment of pleadings under Rule 15(a), supplementation of original pleadings is to be liberally permitted 'when justice so requires.'" *Bromley v. Michigan Educ. Ass'n-NEA*, 178 F.R.D. 148, 153-54 (E.D. Mich. 1998) (quoting Fed. R. Civ. P. 15(a)).

### III. Analysis

Plaintiff's primary assertion is that amendment and supplementation of his complaint is necessary because once the

Administrative Record became available for review, "it became apparent that additional violations could be proved." ECF No. 29, PageID.2442. Plaintiff claims that a review of his "Exhibit A6" reveals that the Administrative Record does not include Fraley's "underlying employee claim file." Because Plaintiff believes he was denied a proper and comprehensive review as required by ERISA, he should be entitled to bring additional claims. Additionally, Plaintiff argues his due process concerns cannot be addressed within the context of the underlying ERISA claims because they entail different remedies and different equitable relief. The Court will consider each in turn, beginning with the new claims Plaintiff seeks to add to the complaint and ending with those claims in Plaintiff's original complaint that he seeks to supplement with additional allegations. The original complaint contained four Counts, so the first new claim is identified in the proposed Amended Complaint as "Count V."

## A.    Proposed Count V: Failure to Pay Enhanced Variable Pay

Count V of Plaintiff's proposed amended complaint alleges that GM failed to pay him Enhanced Variable Pay ("EVP") for 2013 while he was on disability leave and receiving S&A and EDB benefits. Under Section 9 of the SPD (page 180),[2] "GM makes contributions for . . . the Enhanced

---

[2] The Court may consider the contents of the SPD in deciding Plaintiff's motion to amend the complaint because the proposed amended complaint extensively quotes the SPD and is therefore part of the pleadings. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 949 (6th Cir. 1990).

Variable Pay Plan after you become eligible and while you are in *active service*." ECF No. 31-2, PageID.2547 (emphasis added). Plaintiff's proposed amended complaint does *not* allege that Plaintiff was in "active service" in 2013. Instead, it alleges that Plaintiff was an "[a]ctive [e]mployee on [d]isability [l]eave for the entire year 2013." ECF No. 29-2, PageID.2482.

While the SDP (Summary Plan Description) does not contain a specific definition for the term "active service," it does define the phrase "actively at work" in the Plan's glossary of terms. That definition is helpful in considering Plaintiff's allegation that he was an "active employee on disability leave." The SPD's glossary defines "actively at work" as:

> whenever you are performing the regular duties of your assignment, as determined by the Company, on a scheduled work day at one of the Company's places of business or at any other location to which the Company's business may require you to travel. Assignment includes both your regular assignment as well as any given on a temporary basis. If you are on an approved vacation as determined by the Company, or excused with pay, you shall be considered "actively on work" while on such approved vacation. For purposes of initial eligibility for health care coverage, an employee on approved disability leave of absence will be deemed "actively at work."

ECF No. 31-3, PageID.2549.

Plaintiff's original complaint and proposed amended complaint plead and admit that Plaintiff's "last day of *active work* was April 30, 2012." ECF No. 29-2, PageID.2460; ECF No. 1, PageID.2 (emphasis

added). Defendant GM asserts that because Plaintiff pleads and admits that he was not actively working in 2013, he was not in "active service" in 2013 and therefore not entitled to EVP for 2013 under Section 9 of the SPD. *See* ECF No. 31-2, PageID.2547. Further, Section 4 of the SDP describes all of the benefit programs individuals are entitled to while on disability leave; because EVP is not included in that list of programs, Defendant contends that employees on disability leave are not entitled to EVP. *See* ECF No. 31-4, PageID.2560-62. Given all of these factors, Defendant argues amending the complaint to add Count V would be futile. ECF No. 31, PageID.2525-26.

Again, Plaintiff's proposed amended complaint does not allege that his "active employee on disability leave" status satisfies as "active service" under Section 9. But in his reply in support of his motion, Plaintiff rejects GM's reliance on the "active at work" definition and contends that "active at work" is not the same as "active service" under Section 9 of the SPD. Plaintiff also attaches a new affidavit (authored by Fraley on November 12, 2018) stating that he "was periodically called by his supervisor while on approved leave and until his retirement was effective in February, 2014." ECF No. 32, PageID.2584. He states that he "was told he remained an 'active employee' and on the headcount and budget of the department." *Id.* The implication of these additional contentions is that, as an "Active Employee on Disability Leave" for the

14

entire year of 2013, Plaintiff was in "active service" in 2013 and therefore entitled to EVP for that year.

However, affidavits such as this may not be considered by the Court on a motion to dismiss unless they are "referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). This affidavit does not satisfy those parameters because it addresses new facts not contained in the Proposed Amended Complaint. *C.f.*, *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993) (concluding that affidavits attached to plaintiff's complaint were not outside the pleadings because "did nothing more than verify the complaint. They added nothing new, but, in effect reiterated the contents of the complaint itself[]"). Therefore, the Court will not consider this affidavit or the new allegations it makes.

Further, as explained by Defendant, the SDP delineates precisely what benefits are available to an employee on disability through the S&A and EDB programs (which Plaintiff alleges he was on throughout 2013). *See* Section 4, ECF No. 31-4. While Section 4 explains that employees on disability may be entitled to a host of benefits and programs like S&A, EDB, SSDI, contributions to health care coverage, Basic Life Insurance, it does *not* list EVP as an entitled-to benefit or program.

The Court recognizes that there may be some ambiguity between "active service" and "actively at work" for purposes of determining

15

entitlement to EVP benefits under the Plan. But even accepting all allegations as true in Plaintiff's proposed Count V, Plaintiff simply does not allege that he was in "active service" in 2013 as required under Section 9 of the SPD. Rather, he alleges on the one hand that his "last day of *active work* was April 30, 2012" but yet he was also an "active employee on disability leave" throughout 2013. Such allegations do not state a plausible claim for EVP benefits under the terms of the SPD. This is even more so where Section 4 of the SPD does not state that employees on disability leave are entitled to EVP benefits. Therefore, amending Plaintiff's complaint to include proposed Count V would be futile.[3]

## B. Proposed Count VI: False Appeals as violations of ERISA, the Rehabilitation Act, the Americans with Disabilities Act, and the Michigan Persons with Disabilities Civil Rights Act

Proposed Count VI alleges that GM and unnamed administrators (presumed Doe defendants) "demonstrated a pattern of labeling standard communications as 'an Appeal,'" and that this conduct violates a host of federal and state laws. ECF No. 29-2, PageID.2483-85. In doing so, Plaintiff recounts a handful of communications that he contends GM impermissibly labeled "appeals," when they were simply "standard

---

[3] Plaintiff's proposed amended complaint also cites to Section 6 of the SPD (page 131), to support his argument that he is entitled to EVP for 2013. That section states: "[i]f severance occurs following the end of an EVP performance period but prior to the payment date, the employee is eligible to receive EVP payout consideration for the prior performance period." But Plaintiff's proposed amended complaint does not allege that he was "separated in a reduction in force" as is required under the terms of Section 6 of the SPD. Section 6 is therefore irrelevant.

communication[s]." *Id.* Plaintiff contends these communications show that in March of 2014, he spoke with an employee of proposed defendant Fidelity, named "Hanna", and inquired about why his health care status was listed as "inactive." *Id.* He states that Hanna wanted to initiate an appeal for Plaintiff regarding the concern and Plaintiff informed her expressly not to do so. *Id.* Then, on November 13, 2015, GM sent a letter to Plaintiff referring to a communication from Plaintiff's counsel as an "appeal of Plaintiff's eligibility for health care coverage." Plaintiff contends that this, and other communications, were not appeals from Plaintiff but merely "attempts to resolve issues through dialogue at the lowest possible level." *Id.*

Plaintiff's complaint does not allege, in any way, how these actions amount to a violation of ERISA, the Rehabilitation Act, the Americans with Disabilities Act, or the Michigan Persons with Disabilities Civil Rights Act. The proposed amended complaint simply states that these actions violate this laundry list of statutes. *See* ECF No. 2484-85. While "assumed to be true," a plaintiff's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.* Plaintiff has not shown,

even accepting the allegations as true, that he would be *entitled* to relief under ERISA, the Rehabilitation Act, the Americans with Disabilities Act, or the Michigan Persons with Disabilities Civil Rights Act because Plaintiff does not plead how mislabeling Plaintiff's counsel's communications as "appeals" meets any of the material elements of any of these causes of action. Amending Plaintiff's complaint to add Count VI would therefore be futile.

## C. Proposed Count VII: Interference with Entitled Disability Benefits

In proposed Count VII, Plaintiff alleges that prohibited deductions were made to his Entitled Disability Benefit ("EDB") payments and that this amounted to ERISA interference. ECF No. 29-2, PageID.2485-88. He claims the deductions were impermissible because the Plan does not permit deductions while Social Security Disability Insurance ("SSDI") and Total and Permanent Disability ("TPD") retirement applications are processing.[4]

ERISA prohibits "any person to discharge, fine, suspend, expel, discipline, or discriminate against any participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan[.]" Section 510 of ERISA, 29 U.S.C. § 1140. "Congress enacted section 510 primarily to

---

[4] Plaintiff refers to "the Plan document referenced above in § B (1)" but no § B (1) exists in the document. And many of Plaintiff's other allegations in this Count are disjointed and difficult to follow. For example, Plaintiff references a July 14, **2014** letter from GM as responding ***to*** a May 27, ***2018*** Appeal of Decisions.

prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits.'" *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997). The elements of a § 510 claim consequently require the plaintiff to demonstrate that "(1) he was engaged in an activity that ERISA protects; (2) he suffered an adverse employment action; and (3) a causal link exists between his protected activity and the employer's adverse action." *Williams v. Graphic Packaging Int'l, Inc.*, 790 Fed.Appx. 745, 754-55 (6th Cir. 2019) (quoting *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 628 (6th Cir. 2008)). "The Sixth Circuit has recognized two different kinds of claims under Section 1140 [ERISA § 510]: '(1) a retaliation claim where adverse action is taken because a participant availed [him]self of an ERISA right; and (2) an interference claim where an adverse action is taken as interference with the attainment of a right under ERISA.'" *Id.* at 755 (quoting *Hamilton*, 522 F.3d at 627-28). Therefore, to make out a § 510 claim, a plaintiff must allege some kind of adverse employment action. *See Spangler v. East Kentucky Power Coop., Inc.*, 790 Fed.Appx. 719, 721 (6th Cir. 2019) (affirming district court's motion to dismiss § 1140 claim where plaintiff failed to plead facts that plausibly alleged that defendant discharged her for the purpose of interfering with her rights to her husband's benefits); *Schewitzer v. Teamster Local 100*, 413 F.3d 533, 537 (6th Cir. 2005).

Here, the allegations in proposed Count VII do not allege any adverse employment action. *See* ECF No. 29-3, PageID.2485-88. In his reply in support of his motion to amend, Plaintiff asserts that "[t]hirty nine (39) ERISA Interference adverse employment actions are contained throughout the [proposed] Amended Complaint." ECF No. 32, PageID.2578 (citing *Lawson v. Avis Budget Car Rental, LLC*, 2016 WL 3919653 (S.D.N.Y. July 12, 2016); *Imperato v. Otsego Cty. Sheriff's Dep't.*, 2016 WL 1466545 (N.D.N.Y. Apr. 14, 2016)). But Plaintiff makes no effort to identify with specificity the supposed adverse employment actions "contained throughout" the 52-page proposed amended complaint, and they are not alleged under Count VII. "[M]erely asserting that [he has] alleged sufficient facts without telling [the Court] what those facts are amount to mentioning an argument 'in the most skeletal way . . . leaving the court to put flesh on its bones." *Agema v. City of Allegan*, 826 F.3d 326, 332-33 (6th Cir. 2016) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997)). This the Court will not do. Without reference to supporting facts, Plaintiff's argument "becomes a conclusory statement insufficient to state a plausible claim." *Id.* Accordingly, this claim is futile.

## D. Proposed Count VIII: Failure to Accommodate under the ADA

Proposed Count VIII alleges that GM violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and 29 C.F.R. § 1630.2(o), when Plaintiff's counsel requested to represent Plaintiff for all

20

communications with the GM Benefits & Services Center in a January 27, 2014 letter and GM refused. ECF No. 29-2, PageID.2488. Plaintiff alleges counsel attempted to follow up with GM management and GM did not respond and asserts that this amounts to a failure to accommodate under the ADA. *Id.*

Under an ADA failure to accommodate claim, a plaintiff must show that: "(1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer was aware of his disability; (4) an accommodation was requested; and (5) the employer failed to provide the necessary accommodation." *Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621, 626 (W.D. Mich. 2009).

Permitting Plaintiff to amend his complaint to add this count would be futile because it is barred for failure to exhaust administrative remedies. Defendant GM raises this failure to exhaust in its response to Plaintiff's motion to amend. ECF No. 31, PageID.2532-33. "An employee may not file suit under the ADA if he or she does not possess a right-to-sue letter from the [Equal Employment Opportunity Commission] EEOC because he or she has not exhausted his or her remedies." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Plaintiff's proposed amended complaint makes no mention of the EEOC, nor does it allege an attempt to exhaust administrative remedies in this manner by obtaining a right-to-sue letter. On reply in support of his

motion, Plaintiff asserts that Defendant's claims of exhaustion are improperly raised and must be saved for a motion for summary judgment. ECF No. 32, PageID.2576. But that is not so. Failing to timely file a charge of discrimination with the EEOC is a proper ground for dismissal pursuant to FRCP 12(b)(6). *See Campau v. Orchard Hills Psychiatric Center*, 946 F. Supp. 507, 509 (E.D. Mich. 1996).

Plaintiff also argues that his failure to file a complaint with the EEOC should be equitably tolled because he did not have enough information to support filing a discrimination claim. "Equitable tolling 'permits a plaintiff to avoid the bar of the statute of limitation if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" *Campau*, 946 F. Supp. at 511 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (Posner, J.), *cert. denied*, 501 U.S. 1261 (1991)). "Equitable tolling is inappropriate where a plaintiff has either actual or constructive notice of his rights." *Id.* (citing *Jackson v. Richards Medical Co.*, 961 F.2d 575 (6th Cir. 1992)).

Here, the alleged facts do not support tolling because, according to the allegations in Plaintiff's proposed amended complaint, Plaintiff was aware of GM's alleged refusal to correspond with Plaintiff's counsel as soon as it occurred in 2014. *Campau*, 946 F. Supp. at 512-13 ("Judge Posner concluded, and at least one district court in the Eastern District of Michigan has agreed, that 'a plaintiff who invokes equitable tolling to suspend the statute of limitation must bring suit within a reasonable

22

time after he has obtained the necessary information.'"). And even still, Plaintiff has given no indication to the Court, via his proposed amended pleadings or otherwise, that he attempted to file an EEOC charge as soon as he learned of the necessary information. *Id.* at 509 (granting defendant's motion to dismiss plaintiff's ADA claim where Plaintiff waited seven months after any possible equitable tolling period to bring charges with the EEOC). Therefore, amending Plaintiff's complaint to add Count VIII would be futile.

## E.   Proposed Count IX: ERISA Interference "Systematic Discrimination"

Count IX appears to be an assertion of an additional ERISA violation, as it is titled "ERISA 510 Systematic Discrimination – COBRA – Medical Reports as Harassment – Plan Prohibited EDB Deductions – False Appeals." ECF No. 29-2, PageID.2488-89. The count alleges that the "sum total" of Defendant's "actions" demonstrates that discriminatory conduct was "allowed and supported" by Defendant and resulted in conduct that "block[ed], hinder[ed,] and interfere[d] with Plaintiff accessing his statutory right to entitled benefits." *Id.* Plaintiff appears to contend that each of these individual, unidentified "acts" of interference are individually actionable and merit a separate remedy. *Id.* As pled, this claim must fail. Plaintiff does not specify what individual "acts" of interference are individually actionable and the claim is largely incomprehensible. This count alleges no facts that could support an

ERISA § 510 claim, and as stated above, the Court will not attempt to discern those arguments where Plaintiff has not. *Agema*, 826 F.3d at 332-33 ("[M]erely asserting that [he has] alleged sufficient facts without telling [the Court] what those facts are amount to mentioning an argument 'in the most skeletal way . . . leaving the court to put flesh on its bones.'")

## F.     Proposed Count X: Breach of Fiduciary Duty

In proposed Count X, Plaintiff alleges that Defendant's COBRA and ERISA violations amount to a "Hydra of breach of fiduciary obligations." ECF No. 29-2, PageID.2489-90. Plaintiff also claims that under 29 C.F.R. § 2520.104-1 and 29 C.F.R. 101.1(k), Defendant had a nondelegable fiduciary duty to maintain and share the administrative record with Plaintiff. Plaintiff alleges that GM failed to provide him with the full claim file and therefore, under ERISA § 502(a)(3), he should be entitled "to obtain other appropriate equitable relief" to redress ERISA violations. ECF No. 29-2, PageID.2490-91.

This claim is futile. Plaintiff's claim that GM has a nondelegable fiduciary duty to share the complete administrative record appears to be a repackaging of Count IV of Plaintiff's original complaint ("Request for Documents") and Count III of Plaintiff's proposed amended complaint ("Request for Documents"). It asserts that Defendant(s) had an affirmative and fiduciary duty to provide requested claim and plan documents under 29 U.S.C. § 1024(b)(4), 29 C.F.R. § 2560.503-1(h), and

29 C.F.R. §§ 2560.503-1(m)(8)(i) and (ii). ECF No. 1, PageID.9-10; ECF No. 29-2, PageID.2477-2479. While Plaintiff seeks to assert this claim under § 502(a)(3), courts have warned that this "catch-all" provision should not be used where a plaintiff may seek relief under another provision of ERISA. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) ("The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies."). Thus, an ERISA claimant cannot "simply characterize a denial of benefits as a breach of fiduciary duty[.]" *Id.* at 616.

Here, ERISA already allows a statutory penalty of up to $110 per day for failure to provide requested documents. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. And both Count IV of Plaintiff's original complaint and Count III of Plaintiff's proposed amended complaint already request equitable relief—ordering GM to produce the claim and plan documents. Plaintiff contends he should be able to seek other unspecified equitable remedies under a § 502(a)(3) claim for the same conduct, relying on *Cigna Corp. v. Amara*, 563 U.S. 421 (2011). But in *Cigna*, the Supreme Court authorized equitable relief in the form of changing the terms of the plan explicitly because relief was not available under another ERISA provision—there, § 502(a)(1)(B). 563 U.S. at 438-39. Here, as explained, Plaintiff may already seek equitable relief in the form of access to the claim and plan documents pursuant to 29 U.S.C.§ 1024(b)(4). In other

words, § 502(a)(1)(B) empowers a plaintiff to "*enforce* his rights under the terms of the plan" by seeking access to plan and claim files to which he is entitled to under the plan. And here, as Plaintiff alleges in Count III of his original complaint, he is entitled to the requested plan and claim documents pursuant to directives in the SPD. Therefore, equitable relief under § 502(a)(3) is unnecessary where § 502(a)(1)(B) already provides the equitable relief Plaintiff seeks—access to his requested plan and claim documents.

And to the extent Count X seeks some form of equitable relief other than access to the claim and plan documents, it is not apparent from the allegations in the claim and therefore is not properly pled. In sum, because the allegations and relief sought in Count X are already being sought in other claims, and the bare-bones allegations contained within Count X provide the Court with no indication that Plaintiff is doing anything other than seeking repackaged claims already alleged, Count X is futile.

## G. Proposed Count XI: EDB and Medical Report Harassment

This count alleges that Proposed Defendant Sedgwick's request for frequent Independent Medical Evaluations to maintain Plaintiff's disability and EDB benefits amounted to harassment of Plaintiff and his physicians. ECF No. 29-2, PageID.2491-93. He alleges that Sedgwick's consistent barrage of paperwork and requests for examinations by Plaintiff's physician caused "an end" to Plaintiff's long-term primary care

relationship with his physician. *Id.* Plaintiff claims this has also caused him stress, frustration, depression, and additional Lupus "flare ups." *Id.*

However, this claim fails to allege a violation of any federal or state law, but simply claims that Sedgwick has engaged in some unspecified "harassment." *Id.* Therefore, Count XI fails to state a claim upon which relief could be granted and it would be futile to amend Plaintiff's complaint to add this count.

## H.   Proposed Count XII: Civil Rights and Discrimination Harassment

Count XII alleges that the "summary of actions" by Defendants demonstrates that they "ignored" their duties "under civil rights law" resulting in "harassment to continue to a level of 'extreme severity.'" ECF No 29-2, PageID.2494. Not only does this count fail to allege the violation of any state or federal law, it is largely incomprehensible and therefore fails to state a claim upon which relief could be granted.

## I.   Proposed Count XIII: Violation of "Two State Laws"

This count alleges that Defendant violated the Michigan Social Security Number Privacy Act ("MSSNP"), M.C.L. § 445.81 *et seq.*, when it allegedly demanded that Plaintiff's counsel supply his Social Security Number and home address before discussing the case with him. ECF No. 29-2, PageID.2495-96. This count also alleges Defendant violated the Michigan Uniform Power of Attorney Act ("MUPOA"), M.C.L. § 700.5501

*et seq.*, when Defendant allegedly refused to accept Plaintiff's counsel's tenders of power of attorney. *Id.*

Both of these claims fail as a matter of law. First, any harm alleged as to the MSSNP was to Plaintiff's *counsel*, not Plaintiff. Therefore, Plaintiff lacks standing to assert this claim. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). Second, M.C.L. § 700.5501 does not create a private cause of action from which Plaintiff can assert a claim. Accordingly, adding Count Proposed XIII to Plaintiff's complaint would be futile.

## J.    Proposed Count XIV: Violation of Michigan Tax Law

Count XIV alleges that GM violated § 141.613 of the Uniform City Income Tax Ordinance ("UCITO"). But the UCITO does not create a private cause of action; it may only be enforced by the ordinance "administrator." M.C.L. § 141.671(2). Plaintiff's reply wholly ignores this argument made by Defendant. This claim fails as a matter of law.

Count XIV also alleges that Defendant violated unspecified provisions of the "Michigan Tax Code" "by taking deductions that were prohibited by law and the GM Life and Disability Plan itself." As discussed with other claims above, this "bare assertion" of liability fails to state a claim upon which relief could be granted. *Agema*, 826 F.3d at 332-33.

### K.    Proposed Count XV: Fraud on the Court and Plaintiff and Spoliation

Count XV of Plaintiff's Proposed Amended Complaint alleges fraud on the Court and spoliation. While Plaintiff contends that fraud and spoliation are actionable torts here, ECF No. 32, PageID.2580 (citing *Welsh v. United States*, 844 F.2d 1239 (6th Cir. 1989)), this is not so.

The Sixth Circuit has made clear that spoliation is a sanction, not a separate cause of action. *See Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009); *Johnson v. Metropolitan Gov't of Nashville and Davidson Cty.*, 502 Fed.Appx. 523, 532-32 (6th Cir. 2012). Further, fraud on the court is a claim appropriately brought in a Rule 60 motion. *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009) ("A Rule 60(b)(6) motion is an appropriate vehicle to bring forward a claim for fraud on the court."); *Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 Fed.Appx. 504, 508 (6th Cir. 2012); *In re M.T.G., Inc.*, 400 B.R. 558, 565-66 (E.D. Mich. 2009). The case on which Plaintiff relies, *Welsh v. United States*, 844 F.2d 1239 (6th Cir. 1989), does not even address fraud on the court claims. Accordingly, it would be futile to amend plaintiff's complaint to add this count.

### L.    Plaintiff's Motion to Supplement of Counts I, II, III & IV

### i. Count I: Healthcare Coverage

Count I in Plaintiff's proposed amended complaint appears to be seeking to supplement Count II of Plaintiff's original complaint. ECF No.

29-2, PageID.2462-65; ECF No. 1, PageID.5-6. Many of the allegations in Count I of the proposed amended complaint track those in Count II of the original complaint. However, there are new allegations in the proposed amended complaint. The new claim include: (1) GM failed to notify Plaintiff that he would lose health care coverage if he retired, which he did on January 1, 2014, and that if there is any discrepancy between the Plan and the SPD[5], the Plan "must be made to conform to the unambiguous promises that were made in the SPD; (2) that GM's failure to provide health care coverage has resulted in "bodily injury and psychological and emotional distress," and impaired Plaintiff's ability to obtain necessary medical treatment (3) that GM, Fidelity and Sedgwick have been unjustly enriched. In part, these supplementations just provide additional context to Plaintiff's Health Care Coverage claim but do not allege *new* conduct that occurred after Plaintiff filed his original complaint. "The purpose of a supplemental pleading is to set forth new facts that have occurred since the filing of the original pleading and that affect the controversy and relief sought. Its function is to bring the action 'up to date.'" *Weisbord v. Michigan State University*, 495 F. Supp. 1347, 1350-51 (W.D. Mich. 1980); *see also Pullard v. Federal Bureau of Prisons*,

---

[5] The Plan is the large internal document that sets out in detail a claimant's benefits. The SPD is the shorter, more digestible document that is given to the claimant to summarize their rights under the Plan. When these two documents conflict with each other, there is a body of case law that the Court must apply in resolving the conflict. *See CIGNA Corp. v. Amara*, 563 U.S. 421 (2011); *Board of Trustees v. Moore*, 800 F.3d 214, 219 (6th Cir. 2015).

535 F. Supp. 2d 146, 149 (D.D.C. 2008) (construing proposed supplemental pleading as proposed amended pleading because the supplemental pleading itself did not allege facts pertaining to occurrences or events taking place after the date of the original complaint). Therefore, the Court will treat proposed Count I as a proposed amendment to Count II of the original complaint.

Portions of this proposed amendment to Count II of the complaint must be denied as futile. First, to the extent Count I alleges an unjust enrichment claim, see ECF No. 29-2, PageID.2465 ¶36, this state law claim is precluded. *Loffredo v. Daimler AG*, 666 Fed.Appx. 370, 375 (6th Cir. 2016) (quoting 29 U.S.C. § 1144(a)). Moreover, to the extent these amendments seek additional damages such as "emotional distress," those damages are unavailable in an ERISA claim. *See* 29 U.S.C. § 1132(a)(1)(B); § 1132(g); *Mass. Mut. Life Ins. Co v. Russell*, 473 U.S. 134, 144 (1985) (ERISA § 502(a)(1)(B) "says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim"). As for the remainder of the allegations in proposed amended Count I (those contending that GM failed to notify Plaintiff that he would lose health care coverage if he retired, which he did on January 1, 2014, and that if there is any discrepancy between the Plan and the SPD, the Plan "must be made to conform to the unambiguous promises that were made in the SPD"), these allegations go to Plaintiff's procedural challenge to the

administrator's decision, and the Court will accept Plaintiff's proposed amended Count I in so far as it realleges Count II of Plaintiff's original complaint and makes these additional permissible allegations described above. *See Wilkins*, 150 F.3d at 618.

### ii. Count II: COBRA Violation

Count II of Plaintiff's proposed amended complaint appears to be a supplement to Count III of Plaintiff's original complaint.[6] This amendment adds two additional allegations.

First, it alleges that "Plaintiff timely elected COBRA with phone and automated email confirmation from the General Motors LLC Administrator," and adding a new citation to "ex A1, pp 1-8," which Plaintiff claims was "redacted from the administrative file that Defendant filed with the court." ECF No. 29-2, PageID.2466. However, the only "ex A1" in the record—which is attached to a prior stricken motion for summary judgment, not to Plaintiff's motion for leave to amend his complaint—is a one-page document dated March 31, 2014 and acknowledges that Fidelity had received a "recent Health & Insurance service request" and has "resolved" said request. ECF No. 16-8, PageID.1358. It is unclear from the record whether "ex A1" is one of the 38 documents with which GM has agreed to supplement to the

---

[6] Like Count I, Count II does not allege any facts occurring after Plaintiff's original complaint was filed. As such, Plaintiff will treat this count as an amendment, rather than a supplement, to Plaintiff's original complaint.

Administrative Record. *See* ECF Nos. 43-44. But to the extent that it is not, a review of the Administrative Record already reveals evidence of these informal communications between GM, Fidelity, and Plaintiff's counsel, as evidenced by email communications between Plaintiff's former counsel and representatives of GM. *See, e.g.*, ECF No. 6-6, PageID.983-84; PageID.1029-32. These email communications recount Plaintiff's interactions with GM Benefits & Services Department employees over the phone about electing COBRA coverage.

Second, it alleges that "Defendant"[7] intentionally prevented Plaintiff from exercising his COBRA rights by "backdating Plaintiff's retirement date and ignoring the date of the notice," "removing it from the portion of their website he could access; and repeatedly purposely thwarted continuation of health care coverage." ECF No. 29-2, PageID.2472.

As with proposed Count I, some of Fraley's proposed amendments contained in Count II (Count III in the original complaint) are futile. To the extent amended Count II alleges that the "foregoing" constitutes an intentional act of interference with Plaintiff's protected right to COBRA continuing coverage under ERISA § 510, 29 U.S.C. § 1140. ECF No. 29-2, PageID.2470, this allegation falls short because Plaintiff has not alleged any adverse employment action to state a § 1140 claim. *Spangler*, 790 Fed.Appx. at 721. Further, this Count makes allegations regarding

---

[7] It is unclear here whether Plaintiff means GM or Fidelity.

"power of attorney," and GM's request of Plaintiff's counsel's social security number, which, as explained above, do not create private rights of action for Plaintiff. The same holds for Plaintiff's arguments about fraud on the court, spoliation, and generalized harassment, which are addressed above.

However, some of the allegations in proposed Count II expand on the reasons why Plaintiff believes he was denied COBRA benefits and alleges—albeit inadvertently—the presence of some procedural challenge to the Plan Administrator's decision. It contends that the Administrative Record does not contain evidence of communications from Defendant to Plaintiff that Plaintiff had COBRA coverage and could receive certain treatments. ECF No. 29-2, PageID.2466. It also contends that Defendant made electing COBRA impossible by removing COBRA options from the portions of their website that Plaintiff could access. These allegations, in addition to those that appear to be copy and pasted from Count III of the original complaint, will survive as Plaintiff's Count II.

### iii. Count III: Failure to Provide Requested Documents

Proposed Count III attempts to supplement Count IV of Plaintiff's original complaint, alleging that Defendant GM failed and refused to produce requested claim documents and plan documents after Plaintiff, by his attorney, made two written requests. ECF No. 29-2, PageID.2477-79. The only additional allegation in Proposed Count III not contained in the original complaint is the allegation that Defendant GM sent the

administrative file to an inaccurate email for Plaintiff's new counsel. Defendant GM contends that this count is substantively the same as the allegations in the original complaint. ECF No. 31, PageID.2540. The Court agrees, finding the proposed supplements have no practical purpose and are therefore futile. *See Beal Corp. Liquidating Trust*, 927 F. Supp. 1350, 1374 (D. Colo. 1996).

### iv. Count IV: Denial of Benefits; Life Insurance

This count realleges Count I in Plaintiff's original complaint but makes additional allegations that appear to seek to transform this count into a breach of fiduciary duty claim. *See* ECF No. 29-2, PageID.2481 ¶ 88. Not only must this allegation of a breach of fiduciary duty be separated into its own claim, as explained above, § 502(a)(3) should not be used where a plaintiff may seek relief under another provision of ERISA. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). Here, Plaintiff is making a claim for life insurance benefits under ERISA § 502(a)(1), (as he did in Count I of his original complaint), so to allege in the same count that this also amounts to a breach of fiduciary duty does not make much sense to the Court. These allegations are futile and not well taken.

However, this proposed count also alleges that the SPD and/or the Plan failed to clearly explain how Plaintiff should seek life insurance coverage and that there may have been some discrepancies in life insurance coverage between the Plan and the SPD. ECF No. 29-2,

PageID.2481. It also alleges that GM did not respond to Plaintiff's administrative appeal with respect to the Life and Disability Plan. *Id.* at PageID.2479. In addition to those claims that appear to be copy and pasted from Count I of Plaintiff's original complaint, these allegations will be accepted as an amendment to Count I of Plaintiff's original complaint because they are not futile.[8]

## M.    The addition of Sedgwick, Fidelity, and Does 1-20

Plaintiff contends that Sedgwick and Fidelity are proper parties to the claim because they are the designated plan administrators of Plaintiff's Life and Disability Benefits Program and Salaried Retirement Program Plans respectively. ECF No. 32, PageID.2579-80. This is incorrect. Plaintiff seeks benefits under three ERISA Plans: (1) the General Motors Salaried Retirement Program; (2) the General Motors Life and Disability Benefits Program; and (3) the General Motors Salaried Health Care Program. ECF No. 29-2, PageID.2458-59. The Administrative Record contains the Plans of each of these programs. A review of those plans shows that GM is the designated Plan Administrator. ECF No. 6-4, PageID.608 (Salaried Retirement Program); ECF No. 6-3, PageID.276 (Life and Disability Benefits Program); ECF No. 6-2, PageID.49 (Salaried Health Care Program). Therefore, GM, not Fidelity or Sedgwick, is the proper defendant for Plaintiff's claims for

---

[8] Defendant GM expressly states in its response that Counts I-IV of Plaintiff's original complaint are not futile. *See* ECF No. 31, PageID.2541.

benefits under ERISA. *Riverview Health Institute LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 522-23 (6th Cir. 2010) (explaining that in a claim for benefits under ERISA, the only proper defendants are the Plan Administrator and the Plan itself).

Further, Plaintiff has failed to identify how the alleged Does 1-20 are fiduciaries for purposes of ERISA or otherwise liable under the surviving claims. *Id.*; ECF No. 29-2, PageID.2456, ¶ 5 ("Various anonymous persons purported to act on Plaintiff's claims, and each of the Defendants has engaged in conduct prohibited by statute."). Because Plaintiff has failed to provide a basis to add these unnamed parties to the case, his request is futile. *Annabel v. Michigan Dep't of Corr.*, No. 16-543, 2018 WL 3455407, at *11 (W.D. Mich. July 18, 2018) (finding dismissal warranted where plaintiff failed to properly allege "the personal involvement of any Defendant").

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Leave to File Plaintiff's Amended and Supplemental Complaint is **DENIED IN PART[9] AND GRANTED IN PART**. As explained in detail above, the Counts I-IV of the original complaint may be supplemented by as directed

---

[9] Many of the proposed amendments raised by Plaintiff here were completely frivolous, but required a significant amount of effort to unravel, comprehend, and analyze. No additional amendments may be made to this complaint, and Plaintiff's counsel is admonished to take care to avoid mounting further frivolous legal claims or arguments.

herein, but Counts V-XV of the Amended Complaint are futile and may not be added, nor may additional proposed defendants Sedgwick Claims Management Services, Inc., Fidelity & Guaranty Life Insurance Co., or any Does be added.  In summary, and to aid the parties going forward, Plaintiff's remaining claims that may proceed following this Order include:

- Count I: Life Insurance. This count may include the allegations set forth in Count I of Plaintiff's Original Complaint, and the following allegations set forth in Count IV in Plaintiff's Proposed Amended Complaint: that the SPD and/or the Plan failed to clearly explain how Plaintiff should seek life insurance coverage and that there may have been some discrepancies in life insurance coverage between the Plan and the SPD. It may also include the allegation that GM did not respond to Plaintiff's administrative appeal with respect to the Life and Disability Plan.

- Count II: Health Care Coverage. This count may include the allegations set forth in Count II of Plaintiff's Original Complaint, as well as the following allegations set forth in Count I of Plaintiff's Proposed Amended Complaint: that GM failed to notify Plaintiff that he would lose health care coverage if he retired, which he did on January 1, 2014, and that if there is any discrepancy between the Plan and the SPD, the Plan must be made to conform to the unambiguous promises that were made in the SPD.

- Count III: COBRA. This count may include the allegations set forth in Count III of Plaintiff's Original Complaint, as well as the following allegations set forth in Count II of Plaintiff's Proposed Amended Complaint: that the Administrative Record does not contain evidence of communications from Defendant to Plaintiff that Plaintiff had COBRA coverage and could receive certain treatments. It will also contain the allegation that Defendant made electing COBRA impossible by removing COBRA options from the portions of their website that Plaintiff could access.

- Count IV: Request for Documents. This may include the allegations set forth in Count IV of Plaintiff's Original Complaint. This count may not include any other additions or supplements from Plaintiff's Proposed Amended Complaint.

Plaintiff is **ORDERED** to file an Amended Complaint within 14 days that tracks this Court's Order. The Court will strike any Amended Complaint that deviates from these directives or attempts to further amend or supplement the complaint.

Finally, Defendant GM is **ORDERED** to supplement the Administrative Record within 14 days with the those documents the parties have stipulated to.

**IT IS SO ORDERED**.

DATED: June 1, 2020.

BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge