UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

**CHARLES FRALEY**,

        Plaintiff

v.                              Honorable Terrence L. Berg

                                 Case No. 16-14465

**GENERAL MOTORS LLC**

               Defendant

_____/

STANLEY T. DOBRY, P-24052

Attorney for Plaintiff

28401 Mound Road, # 1244

Warren, MI 48090-1244

dobry.arbitrator@gmail.com

(586) 899-3236

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: Tina M. Bengs P.C.       By: Lori Keen Adamcheski, P69674

Attorney for Defendant       Local Counsel for Defendant

56 S. Washington St., Ste. 302   34977 Woodward Ave., Ste. 300

Valparaiso, IN  46383-7500    Birmingham,  MI  48009-0900

(219) 242-8664                (248) 723-6131

      tina.bengs@ogletree.com    lori.adamcheski@ogletree.com

<u>THIRD AMENDED AND SUPPLEMENTAL COMPLAINT</u>

There is now on file in the United States Federal District Court for the Eastern District of Michigan a civil action arising from and related to the matters alleged herein. That is Case No. 16-14465, styled *Charles Fraley v. General Motors LLC*, which is assigned to the Honorable Terrence L. Berg.

<u>THIRD AMENDED AND SUPPLEMENTAL COMPLAINT</u> [1]

Plaintiff, by his attorney, STANLEY T. DOBRY, states:

**1.  NATURE OF PROCEEDINGS; JURISDICTION; AND VENUE**

1.  This is an action at law and in equity which requests

*inter alia* monetary, equitable and other relief for Plaintiff, a

participant in welfare benefit plans and a defined benefit

retirement plan for GENERAL MOTORS LLC employees.

2. This action arises under the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., to recover

benefits and relief due as provided in §§ 1332(a)(1)(B),

_____

[1] This third amended and supplemental Complaint is intended to supersede and replace in its entirety the prior complaints. See *Ramirez v. County of San Bernardino*, 806 F.3d 1002 (2015). *Rick-Mik Enters., Inc* "... the original pleading no longer performs any function." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th CCA, 1992).

1132(a)(2), 1132(a)(3), 1132(e) and (f) that district courts have jurisdiction over actions involving benefits, rights and violations under the terms of an employee benefit plan and ERISA. Further Plaintiff seeks miscellaneous relief for other ancillary violations, inter alia, of state law, plan documents and promised benefits.

3. Venue is proper under 29 U.S.C. § 1 132(e)(2) and 28 U.S.C. §1391(b) because the alleged violations took place in this district or because a substantial part of the events or omissions giving rise to the claims occurred in this district.

4. Federal Rules of Civil Procedure, Rule 15 (a) provides:

(1)  Amending as a Matter of Course. A party may amend its pleading once as a matter of course within: ...

(2)  Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires[2] .

---

[2]2Upon filing, the amended complaint replaces the original complaint. See, *Ramirez v County of San Bernardino*, 806 F.3d 1002 (2015).  "the original pleading no longer performs any function" *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992). The prior Complaint ceased to exist.

5. Pursuant to ERISA plaintiff seeks all appropriate relief to make him whole for all losses that he has suffered. § 502(a)(1)(B) and § 502(a)(3) state: Persons empowered to bring a civil action: A civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan; . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a).

## 2.  COMMON ALLEGATIONS

6. Plaintiff is a former engineer employed by defendant. He was hired on September 8, 1997, and his last day of active work

was April 30, 2012.

7.  Plaintiff ceased performing work for defendant due to disability from lupus, Reynaud's syndrome, and chronic obstructive pulmonary disease.

8.  Plaintiff's last basic salary was $97,000 per year.

9.  Plaintiff is a lay person without formal legal training.

10. Defendant is the administrator and sponsor of the following ERISA, plans:

   i.   GM Salary Retirement Program

   ii.  GM Life and Disability Benefits Program

   iii.  GM Salary Health Care Program

11. Plaintiff was a participant in the above plans and remains a participant in the GM Salary Retirement Program and GM Life and Disability Benefits Program.

12.  Plaintiff was entitled to continued health care coverage under defendant's group health care plan and to timely notice of

his right to continue that coverage. *Consolidated Omnibus Budget Reconciliation Act* ("COBRA"), 29 U.S.C. § 1166(a)(4).

13.  Plaintiff applied for Social Security Disability Insurance Benefits, which was granted on March 26, 2014, with a disability onset date of May 1, 2012.

14.  Defendant granted Plaintiff Sickness and Accident Benefits beginning October 1, 2012; then Extended Disability Benefits for his total and permanent disability under its Disability Benefits Program beginning May 8, 2013.

15. The Extended Disability Benefits are payable until Plaintiff is age 65 if he remains totally and permanently disabled.

16.   Plaintiff filed claims with defendant for company paid Basic Life Insurance, Company Paid Health Care Coverage, and COBRA continuation coverage.

17.  Defendant issued a final denial of Plaintiff's claims on

January 11, 2016, and he has exhausted his internal appeals.

## COUNT I – LIFE INSURANCE

18. Defendant's Summary Plan Description ("SPD")

effective January 1, 2012, provides:

> •Amount of Coverage As a classified or Flexible Service employee, you[r] Basic Life Insurance is equal to two times your current annual base salary. SPD, p. 109.

19. Defendant, by MetLife, notified Plaintiff that his Basic

Life Insurance was $175,800. Exhibit 1. **Fraley PL**

**Exhibit000009**

20. The SPD further provides that defendant pays for the

basic life insurance while Plaintiff is totally disabled as follows:

> Life and Disability Benefit Coverages:
>
> **"For employees with a service date prior to January 1, 2001":**
> Company contributions for Basic Life Insurance, Sickness and Accident, and Extended Disability Benefits coverages will be continued:
>
> • For any period you are entitled to receive Sickness and Accident benefits or salary continuation payments while you are totally disabled;
>
> • And thereafter, while you are totally and continuously disabled and remain

Page 7

on approved disability leave ....

• If you have 10 or more years of participation at the commencement of your disability, your Basic Life Insurance will be  continued at *no cost to you* while you are totally disabled up to age 65. SPD, p. 104 [Emphasis added].  **FraleyAR_000712**

21. Plaintiff remains totally and continuously disabled and

defendant continues to pay Plaintiff monthly disability benefits.

22.  Defendant has failed and refused to provide Basic Life

Insurance at no cost to Plaintiff.

23.  Plaintiff cannot obtain substitute life insurance because of

his preexisting disease and disability, and has no plain, speedy and

adequate legal remedy.

WHEREFORE Plaintiff requests that the court issue a

declaratory judgment, an injunctive order defendant to reinstate

and provide company paid Basic Life Insurance, monetary

damages, equitable relief, litigation costs, pre and post judgment

interest, and reasonable attorney fees.

## COUNT II — HEALTH CARE COVERAGE

24.  Paragraphs 1 to 23 are realleged as though set forth in full.

25.  The SPD provides that the General Motors LLC plan pays for Plaintiff's health care coverage as follows:

"If your length of service date with the Company is prior to January 1, 2011, *"GM will continue contributions towards your health care coverages while you remain totally and continuously disabled and you remain on an approved disability leave."* SPD, p. 103 **FraleyAR_000711** [Bold font deleted. Emphasis added.].

26.  Plaintiff has been and remains totally and continuously disabled and on an approved disability leave, and defendant continues to pay Plaintiff monthly disability benefits.

27. Upon request from Plaintiff for clarification of the General Motors Life and Disability Plan promise of company paid Health Care Coverage to age 65 if he retired due to a total and permanent disability, the Defendant failed to notify Plaintiff he would lose coverage. To the extent that the Life and Disability Plan may say anything to the contrary, it must be made to

conform to the unambiguous promises that were made in the SPD.

28. Plaintiff has incurred medical, health care, dental care and pharmaceutical costs and health care insurance premiums, which are subject to these proceedings and promises. Those costs and insurance premiums are continuing and have not been paid by Defendant even though they were covered by the plan.

29. As a consequence, Plaintiff has suffered bodily injury and medical distress.

30.  The potential savings of the costs of medical treatment was a motivating factor in the Defendant's termination of insurance and benefits.

31. In *Pearce v Chrysler Group LLC Pension Plan*, 893 339 (2018):

> "...Because of "[t]his material conflict between the Pension Plan and the SPD," Pearce could "seek equitable relief under ERISA §

502(a)(3)."[3]

32. Defendant did not respond to the Administrative Appeal by Plaintiff for the Health Care Coverage promises from the General Motors LLC Life and Disability Plan. The reply from the defendant all referenced the General Motors LLC Salaried Health Care and Retirement programs.

WHEREFORE Plaintiff requests that the court order defendant to reinstate and provide company Health Care Program benefits, monetary damages, equitable relief, litigation costs, and reasonable attorney fees.

---

[3] In *Rochow v. Life Insurance Company of North America*, 780 F.3d 364, 372 (6th Cir. 2015)(en banc), the Sixth Circuit, sitting *en banc*, ruled that *Varity Corp.* allowed Rochow to pursue other appropriate equitable relief under ERISA § 503(a)(3) only where his remedy under ERISA § 502(a)(1)(B) did *not adequately provide a remedy for his benefits claim.*

## COUNT III – COBRA VIOLATION

33.  Paragraphs 1 through 32 are realleged as though set forth in full.

34.  Defendant were and are administrators of the GM Salary Health Care Program, a group health plan, and must provide COBRA continuation coverage as a result of a qualifying event. 29 U.S.C. § 1161(a).

35. By letter dated February 26, 2014, defendant notified Plaintiff of his right to elect COBRA continuation coverage. **FraleyAR_000818-FraleyAR_000822**.

36. On March 31, 2014, Plaintiff notified Defendant of his election to continue coverage under defendant's group health plan, **FraleyAR_000850** and **Fraley Supplemental AR_000002.** Plaintiff explained to Defendant that he was going to get expensive medically required treatments (Benlysta infusion), and he needed assurance that he was in fact covered for the cost.

37.   Defendant's agents said they understood, and

represented that Plaintiff was covered for COBRA continuation of health insurance, and would be covered for the costs of his medical treatments. **Fraley Supplemental AR_000002**

38. On April 2, 2014, Plaintiff received a medical treatment of an Infusion of Benlysta with associated blood test.

39. Defendant notified Plaintiff on April 3, 2014, to state that Plaintiff would not be protected by COBRA insurance, id, **FraleyAR_000850**, alleging that the 60 days to elect had expired because his qualifying event occurred on January 1, 2014. They cancelled his COBRA coverage *retroactively*.

40. Revoking Plaintiff's COBRA coverage is an "adverse employment action" that interfered with Plaintiff obtaining his entitled COBRA benefit from the defendant.

41. COBRA is a protected ERISA activity: 29 U.S.C. § 1002(1).

42. COBRA provides that Plaintiff, as a plan participant, has

60 days after defendant's notice of right to continuation

coverage to notify defendant of his election. 26 U.S.C. §

1165(1)(C)(ii).

43. Further, the election notice itself provided:

> "You have 60 days from the date your coverage ends or the date of his notice, *whichever is later*, to elect COBRA continuation coverage." [Emphasis added.]

44. The 60 days for Plaintiff to elect continuation coverage had

not expired because it should have commenced from February 26,

2014, the date of defendant's notice of his right to elect continuation

coverage. 26 U.S.C. § 1165(1)(C)(ii);

45. Plaintiff was entitled to 29 months of continuation coverage

from the date defendant alleged the qualifying event occurred,

because the Social Security Administration determined on March 26,

2014, that Plaintiff was disabled:

> "If you or anyone in your family covered under the Program is determined by the Social Security Administration to be disabled and you notify the Plan Administrator in a timely fashion, *you and your entire family can receive up to an additional 11 months of COBRA continuation coverage, for a total maximum of 29 months."* [Emphasis

added.] SPD, p. 193. **FraleyAR_000801**

46. Plaintiff notified defendant of the favorable Social Security Administration determination that he was totally and permanently disabled on May 27, 2014. **FraleyAR_000861**

47. As a result of defendant's wrongful refusal to grant Plaintiff COBRA continuation coverage, Plaintiff suffered damages for health care expenses for 29 months from the date of the alleged qualifying event, less the COBRA premiums, and physical and medical distress from delay of necessary medical treatment.

48. Defendant and its administrator did not respond to the May 27, 2018 administrative appeal for not providing COBRA continuation coverage.

49. On February 28, 2014, Plaintiff's insurance coverage under the plan was terminated which was a qualifying event under COBRA, making his election timely. **FraleyAR_000915**

50.  Despite the notice as Defendant claimed, they made electing COBRA unavailable (by backdating Plaintiff's retirement date, and ignoring the date of the notice). They had specifically told Plaintiff that the change in effective retirement dates would not adversely affect him. Defendant affirmatively misrepresented the consequence of taking a "retroactive" disability retirement. Likewise, they changed their website, and shut down all of Plaintiff's attempts and avenues of escape to exercise his COBRA options, removing it from the portion of their website he could access; and repeatedly purposely thwarted continuation of health care coverage.

51.  On March 18, 2014, Plaintiff checked the Fidelity website and noted he was enrolled in the General Motors LLC Retiree Salaried Health Care Plan, which he never opted for, and not in COBRA which he chose. The same day he called the GMBSC and informed them he did not want the GM Retiree plan.

WHEREFORE, Plaintiff requests that the court enter judgement in an amount to be determined plus litigation cost, monetary damages, equitable relief and reasonable attorney fees.

### COUNT IV – REQUEST FOR DOCUMENTS

52.  On May 27, 2014, Plaintiff by his attorney made a written request to defendant for:

> "[W]e are demanding copies of all notices, correspondence, phone calls, and file history notes, documents, and memoranda, that may relate to any such claims.
>
> "We are asking for the entire file, including all audio file[s], transcripts, e-mails, instant messages, and other forms of communication, whatever their form may be.
>
> "In addition to all of Mr. Fraley's file and related documents, as listed above. We are requesting from *each* of the Plans' Administrator under ERISA §104, 29 U.S.C. the following for each involved plan:
> • A copy of the Plan document;
> • A copy of any applicable Summary Plan Descriptions;
> • Any insurance agreements, policies, or amendments and any third-party service agreements;
> • Any brochures, benefits statements, or individual certificates that have been distributed to participants;
> • A summary of all benefits paid to the participant and a written breakdown of all benefits that may be due and owing;
> • Any benefit formula, calculation, procedure, worksheet, or similar document setting forth the manner in which eligibility or benefits are determined;
> • Any other documents under which the Plan is administered."

### FraleyAR_000924 - FraleyAR_000936

53.  On December 9, 2015, Plaintiff by his attorney made a second written

request for documents, stating:

> "We once again request a complete copy of the documents and records in possession of the GM Plan(s) and its Plan Administrator concerning Mr. Fraley's COBRA and ERISA eligibility and all communications related thereto, including but not limited to, all electronic and paper correspondence and records of telephone calls made to and from GM Benefits & Services concerning Mr. Fraley's COBRA eligibility and all notations made by GM Benefits & Services representatives concerning these calls."

54. Defendant had a duty to provide the requested claim documents. 29 C.F.R. § 2560.503-1(h); 29 C.F.R. § 2560.503-1(m)(8)(I) and (ii); and SPD, p. 188.

55. Defendant failed and refused to produce the requested claim documents and plan documents.

56. ERISA allows a statutory penalty of up to $110 per day for each occurrence for failure to provide the requested documents. 29 U.S.C. § 1132(c)(1); and 29 C.F.R. § 2575.502c-1.

WHEREFORE, Plaintiff requests that the court:

A. Declare that defendant violated ERISA for failing to furnish Plaintiff the claim and plan documents.

B. Order defendant to produce the claim and plan documents.

C. Award Plaintiff an amount up to $110 per day for failing to

furnish the plan and each claim document.

D. Award Plaintiff litigation costs and attorney fees

pursuant to 29 U.S.C. § 1132(g).

E.  Grant equitable relief as it may apply.

F. Grant such other relief that is fair, equitable, or just.

## Count V. Interference with Entitled Benefits – EDB Plan Prohibited Acts

57. Paragraphs 1 through 56 are realleged as though set

forth in full.

58.  It is undisputed in the administrative claim file that

Plan prohibited deductions were made to Plaintiff's Extended

Disability Benefits (EDB) **Fraley PL Exhibit0000 02 - Fraley PL**

**Exhibit0000 08**

59.  That fact was asserted by Claimant; GM explained the

deductions were "…according to plan provisions…"  The plan

prohibits this during the Social Security Disability Insurance

(SSDI) and GM Total & Permanent Disability (TP&D)

Retirement application process timing[4]. **Fraley PL**

**Exhibit000010 - 11**.

60.  The EDB payments are a protected ERISA activity: 29 U.S.C. § 1002(1).  The plan expressly prohibited such EDB deductions, which are an "adverse employment action" that interfered with Plaintiff obtaining his entitled EDB payments from the defendant. See: *Deleon v. Kalamazoo County Road Commission,* 739 F.3d 914 (2014) *cert. den. Kalamazoo County Road Commission v. DeLeon*, 574 U. S._(2015)[5].

---

[4]The GM Life and Disability Plan: § 4.08 (3) IV-23: "...Presumption of pension plan and retirement program benefits shall not be made with respect to any Extended Disability Benefit payments due for the 12 month period immediately following the date of expiration of the maximum number of months for which the Employee is entitled to receive Sickness and Accident...".

[5]Also in *Deleon* the court listed certain factors to consider in determining whether an employment action was materially adverse: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation". Here we have a material loss of benefits.  The Sixth Circuit relied heavily upon the U.S. Supreme Court's reasoning in *Burlington Northern and Santa Fe Railway Company v. White,* [v] a Title VII retaliation case. The Sixth Circuit found that Section 510 applied beyond the employment relationship in *Mattei v. Mattei*, 126 F.3d 794 (6th Cir. 1997). Although the statute uses terms implicating an employment relationship -- discharge, fine, and suspend -- it also uses definitions that extend beyond that relationship, such as person, participant, and beneficiary. Id. at 803. The Sixth

61.  The reasons GM provided in the deduction notification letters, Plaintiff's exhibits 12, 14, 22, a2**, Fraley PL Exhibit000001 - Fraley PL Exhibit000009** (attached) were inconsistent with the administrative appeal response, which contradicted information GM already had and provided Plaintiff was *not* entitled to. The four letters stated reasons was for the receipt of benefits from the Social Security Disability and GM Retirement Programs which Mr. Fraley ***"might"*** *be entitled to*. This is a change from the GM Life and Disability Plan document id., § 4.08 (3) IV-23 in which says "***is***" entitled to. Mr. Fraley was not entitled to or receiving any of these benefits.

62. The General Motors Life and Disability Benefits Program allows the start for these deductions on the 13th month following the expiration of S&A and EDB benefits. That date was

_____

Circuit reconciled this inconsistency by reading the scope of Section 510 broadly to encompass interference beyond the employment relationship. See: Nos. 00-6780; 01-5024 *White v. Burlington Northern & Santa Fe Ry, Co.*

determined to be May 8, 2014. The date would have been after all EDB deductions GM made to Mr. Fraley's EDB payments, id. The deductions all took place in the Plans "Safe Harbor" timing that provides income protection for the participant for the SSDI and GM Retirement application timing, Par 3. This Plan Protection was interfered with by Defendant. This was a *plan prohibited act* making this change for the GM Life and Disability Plan per id., §4.08(b)(3).[6]

63.   ERISA's anti-retaliation provision, § 510, codified at 29 U.S.C. § 1140, makes it unlawful for:

> "any person" to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary" if the action is taken for any of the following reasons: (1) Because the person exercised any right to which the participant or beneficiary is entitled under an employee benefit plan; (2) To "interfere] with the attainment of any right to which [a] participant may become entitled under [an employee welfare benefit] plan"; ... The Supreme Court has interpreted "plan" to include all employee welfare benefit plans,

---

[6]... the benefits available to Employees are determined solely by the terms of this Program. Absent an express delegation of authority from the Board of Directors, no one has the authority to commit the Company to any benefit or benefit provisions not provided for under the terms of this program."

including those providing unvested benefits"[7].

64. GM was notified by Plaintiff on April 14, 2014 and again in the May 27, 2014 administrative appeal this act was causing severe financial difficulty. They acted in derogation of the plan requirements and caused Plaintiff an extreme financial deficit. This financial catastrophe climaxed at the same time he was denied COBRA. Those concerted circumstances forced Plaintiff to borrow money to live on and purchase medical care while adding further to his 'Lupus Flare Ups'.

---

[7]*Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 514 (1997). Employers can modify or terminate unvested benefits, they may not act with the intention to prevent employees from enjoying the benefits the plan provides. See *Coomer v. Bethesda Hosp. Inc.*, 370 F.3d 499, 510 (6th Cir. 2004). Here we have the intentional interference with the Plans Protection for Mr. Fraley's income during the Social Security Disability and GM Retirement application process timing. We have reduced benefits contrary to the plan.  As in *Coomer v. Bethesda Hosp.*,'We hold that § 510's prohibition against discrimination does not limit a plan sponsor's ability to design or amend a plan in any way it sees fit, so long as the sponsor does not reduce the participants vested benefits.'  Also from *Coomer*, protections of § 510 are not limited to vested pension rights. We have clarified that § 510 "prohibits interference with rights to which an employee 'may become entitled' under 'an employee benefit plan' and does not limit its application to benefits that will become vested." *Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, Life Benefit Plan*, 94 F.3d 236, 242 (6th Cir. 1996) (quoting *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996)).

65.  As the Supreme Court has recognized, the fundamental structural problem with employee benefit claims is that:

> "the entity that administers the [employee benefit] plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket [and] this dual role creates a conflict of interest." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108(2008).

66.  Here we have the same structural problem which has a conflict of interest and a bias on the part General Motors.

67.  The GM appeal response letter dated July 14, 2014, **Fraley PL Exhibit000010 - 11**, replying to the May 27, 2014, Appeal of Decisions contained disinformation for the following; "deductions were taken for the reason of 'Intent to Retire'" (Contrary to all four deduction notification letters stated reasons, *id*). The reported start date of January 1, 2014, for deductions and Mr. Fraley's intent to retire is not correct. Deductions started November 1, 2013 and Plaintiff's "Intent to retire" was established in November, 2013, during his *first* application for a TP&D retirement.

Page 24

68.  Paragraphs 58, 60, 61, 62, 63 and 68 *supra* demonstrate denial of due process for a full and fair review of his claims. It also demonstrates a bias on the part of GM, which acted without reviewing the documents central to Mr. Fraley's claim, was procedurally flawed. Plaintiff was not provided a chance to respond to the decision with the Administrative Claim file or without giving up his statutory rights of judicial review see id, **Fraley PL Exhibit000010 - 11**.

69. This also provides a casual link between Mr. Fraley's ERISA protected activity of EBB payments and GM's adverse employment action of plan prohibited EBB deductions.

70. Mr. Fraley was deprived of his entitled benefit of income protection as the Plan promises. We seek relief under ERISA § 1132(a)(3).

WHEREFORE Plaintiff requests that the court order monetary damages, equitable relief, litigation costs, and reasonable attorney fees. And such other and further relief as

may be available and applicable.

**RESPECTFULLY SUBMITTED,**

STANLEY T. DOBRY, P-24052

July 3rd 2020          Attorney for Plaintiff

CERTIFICATE OF SERVICE

**STANLEY T. DOBRY, hereby certifies that on July 3rd 2020, he served a copy of this** THIRD AMENDED AND SUPPLEMENTAL COMPLAINT **and the Certificate of Service** via the Court's Electronic Court Filing system upon all attorneys who have filed an appearance of record.

I declare that the above statements are true and correct to the best of my knowledge, information and belief.

STANLEY T. DOBRY, P-24052
Attorney for Plaintiff