UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM BUFORD, PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES STANTON FRALEY, DECEASED,**<br><br>Plaintiff,<br><br>vs.<br><br>**GENERAL MOTORS, LLC,**<br><br>Defendant. | **4:16-CV-14465-TGB-MKM**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE RECORD** |

On January 1, 2014, Decedent Charles Fraley[1] effectively retired from General Motors ("GM"). Upon his retirement, his GM-paid employee life and health coverage were terminated, and Mr. Fraley was defaulted into the self-paid GM Salaried Retiree Health Care Plan. The Estate of Mr. Fraley has filed a Motion for Summary Judgment (ECF No. 68) against Defendant GM, seeking review of its decision to deny employee life and health care coverage; challenging GM's denial of retroactive continued coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166(a)(4); and asserting a penalty claim for alleged failure to produce documents pursuant to the Employee

---

[1] Mr. Charles Stanton Fraley passed away in September of 2020 while his claim was pending.

1

Retirement Income Security Act ("ERISA"). ECF No.68.  In response, GM has cross-moved for Judgment on the Administrative Record. ECF No. 71.  As set forth below, Defendant's Cross-Motion for Judgment on the Record is **GRANTED** as to Counts I, II, and IV, and **DENIED** as to Count III.  Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED** as to Count III, and this case is **DISMISSED** with prejudice.

## I.   Background

Mr. Fraley was a former engineer employed by GM from September 8, 1997, until December 31, 2013.  ECF NO. 50, PageID.2731-32; ECF No. 68, PageID.2915-16.  His last day of active work was April 30, 2012. *Id*.  While employed at GM, Mr. Fraley alleges he was a participant in, and paid for, the group disability protection plan, which included health care insurances (health, medical, hospital, dental and optical) and life insurance.  ECF No. 68, PageID.2915.

In May of 2013, Mr. Fraley began receiving extended disability benefits due to ongoing health concerns. *Id*. at PageID.2733.  On October 17, 2013, Mr. Fraley applied for Total and Permanent Disability Retirement resulting from lupus, Reynaud's syndrome, and chronic obstructive pulmonary disease, at the age of 55. *Id*.  His retirement was subsequently approved by GM with a commencement date of January 1, 2014.  ECF No. 6-6, PageID.889.

Although Mr. Fraley contends he was not aware of it, GM's company policy is that once an employee retires (including disability retirement), his or her active salaried health care benefits are terminated upon the date of retirement and eligible employees are defaulted into the GM Salaried Retiree Health Care Plan.  ECF No. 6-6, PageID.889; 871.  Unlike the active salaried employee benefits, the retiree plan requires participants to make monthly contributions to continue receiving health care coverage.  Since Mr. Fraley's retirement commencement date was set for January 1, 2014, his healthcare coverage should have terminated upon December 31, 2013.  However, Mr. Fraley did not sign his Pension Election Confirmation Statement authorizing enrollment in GM's benefits program for retired employees until February 11, 2014.  ECF No. 48, PageID.2701.  Upon receipt of the Confirmation Statement, GM terminated Mr. Fraley's GM Salaried Active Healthcare coverage with an end date of February 28, 2014.  This resulted in a two-month delay where GM continued to pay Mr. Fraley's health care benefits as an active employee, even though GM still recorded Mr. Fraley's effective retirement date as January 1, 2014.  ECF No. 6-6, PageID.890.

The delay in receipt of Mr. Fraley's Confirmation Statement caused a rippling effect of miscommunications between Mr. Fraley, GM, and Fidelity—the third party responsible for managing GM employees' COBRA continuation coverage—resulting in the present lawsuit.

3

In a letter dated February 26, 2014, GM informed Mr. Fraley of his right to elect continuation of group health coverage under COBRA. ECF No. 6-6, PageID.985.  The letter stated he had 60 days from the date his health care coverage ended (February 28, 2014) or the date of notice (March 11, 2014),[2] whichever is later, to enroll in COBRA continuation coverage. *Id.* at 986.  The terms stated the deadline to enroll was May 5, 2014, (*id.* at 985), and the eligibility date to start receiving COBRA benefits was March 1, 2014, with a self-pay rate of $492.47 for the next 18 months.  *Id.* at 989.

On March 10, 2014, Attorney Stanley Dobry, on behalf of Mr. Fraley, submitted an appeal letter to GM alleging Mr. Fraley was "forced" to take a "Total & Permanent Disability Retirement" and questioning the termination of his GM paid employee life and health care coverage. ECF No. 48, PageID.2716-19.  Mr. Fraley contested GM's decision, contending that according to the Summary Plan Description ("SPD"), his extended disability benefits were payable until he turned 65 if he remained totally and permanently disabled.  *Id.* at 2717.

On or around March 17, 2014,[3] Mr. Fraley received a "Personal Fact Sheet" and "Enrollment Guide" from GM notifying him that his Blue

---

[2] Mr. Fraley claims he received the letter on March 11, 2014. ECF No. 6-6, PageID.895.

[3] The documents are undated. The Fidelity service portal states "[t]he Literature Reporting tool shows it was mailed on March 11, 2014," presumably referring to GM's Health Insurance documents.  ECF No. 48,

4

Cross Blue Shield insurance ended on February 28, 2014.  ECF No. 6-6, PageID.895.  The Personal Fact Sheet informed Mr. Fraley that as a result of his retirement, he had the "opportunity to review and elect [his] health care coverage for retirement under the GM Retiree Healthcare Program."  *Id*. at PageID.870.  Mr. Fraley was instructed to elect his choice of coverage by the deadline of March 27, 2014, or he would be defaulted into the GM Salaried Retiree Health Care Plan with a self-pay rate of $548.22.  *Id*. at 871.  The alternative was to waive coverage or enroll in COBRA for a self-pay rate of $492.47 for a period of up to 18 months.  *Id*. at 874.  To enroll in a health care plan other than the defaulted GM Retiree Plan, the Enrollment Guide instructed Mr. Fraley to enroll using the website gmbenefits.com and a confirmation statement of benefit elections would be mailed shortly after to confirm coverage. *Id*.

Mr. Fraley claims that on March 18, 2014, he checked the Fidelity website and saw he had been defaulted into the GM Retiree Salaried Health Care Plan.  The same day he states that he called the General Motors Benefits & Services Center ("GMBSC") and expressed that he did not want the GM Retiree Health Care Plan. ECF No. 50, PageID.2743.

While waiting to resolve the dispute concerning the terms of his retirement and health care benefits, Mr. Fraley alleges on March 31, 2014,

---

PageID.2683.  Mr. Fraley states he received the documents on March 17, 2014.

he called Fidelity to enroll in COBRA continuation coverage in accordance with the instructions he received and that "Hanna," a GM representative, informed him via telephone that he would be covered for COBRA continuation of health insurance as of March 1, 2014, and his medical treatments would be covered.  ECF No. 6-6, PageID.895; 940-41; ECF No. 50, PageID.2739.  However, Mr. Fraley alleges that on April 2, 2014, he received a Benlysta infusion (ECF No. 6-6, PageID.888) and the day after, Hanna notified Mr. Fraley that he would not be protected by COBRA insurance, "alleging that the 60 days to elect had expired because his qualifying event (disability retirement) occurred on January 1, 2014." ECF No. 6-6, PageID.954; ECF No. 50, PageID.2749.

However, the 60 days for Mr. Fraley to elect COBRA continuation coverage had not expired because it should have commenced after February 26, 2014,[4] the date of GM's notice of his right to elect continuation coverage.  ECF No. 50, PageID.2741 (citing 26 U.S.C. § 1165(1)(C)(ii)).[5] Accordingly, Mr. Fraley alleges GM intentionally prevented him from exercising his COBRA rights by backdating the date of his retirement and ignoring the date of notice on his COBRA letter.  ECF No. 68-1, 2930-31.

Additionally, Mr. Fraley alleges that on April 5, 2014, he went to the Fidelity website to again sign up for COBRA continuation coverage

---

[4] Mr. Fraley alleges he received the COBRA notice on March 11, 2014.
[5] The election notice provides: "You have 60 days from the date your coverage ends or the date of his notice, whichever is later, to elect COBRA continuation coverage."

and it had been removed, preventing him from exercising his right to elect his preferred health care option. ECF No. 68-1, PageID.2932-33.

Eventually, Mr. Fraley, terminated his self-paid GM retiree health care coverage because he "found the plan to be cost prohibitive." ECF No. 6-6, PageID.993. Though the precise date of eligibility is unclear, the record indicates that at some point in 2014, Mr. Fraley became Medicare eligible, disqualifying him from the GM Retiree Health Care Plan. ECF 6-6, PageID.1030. However, through numerous appeals, Mr. Fraley continued to seek retroactive COBRA continuation coverage with an effective date of March 1, 2014, rather than January 1, 2014, to no avail.

In a letter dated January 7, 2015, Attorney Mami Kato requested that GMBSC investigate Mr. Fraley's claim concerning COBRA continuation coverage and ultimately provide retroactive coverage. ECF No. 6-6, PageID.941. Ms. Kato also requested "all records of Mr. Fraley's COBRA continuation coverage election and any written communication sent to him, including any notices posted on his online account and e-mails, as well as any payments made through his online auto-pay account for COBRA coverage, if any." *Id.*

On February 3, 2015, Ms. Kato spoke with GMBSC representative Josh Garcia who informed her that "Mr. Fraley's COBRA coverage was terminated due to non-payment, and that he was eligible for a one-time retroactive reinstatement, but that it would require auto-pay and a lump-sum payment for all arrears from the effective date (January 1, 2014)

through the present." *Id.* at 955; See also ECF No. 6-6, PageID.867.[6] .

Mr. Garcia also stated that to correct the effective date for COBRA continuation coverage would require a "research request through the appeals process." *Id.*

In a follow-up letter dated April 9, 2015, Ms. Kato appealed: (1) the effective date of eligibility for Mr. Fraley's COBRA continuation coverage (Research Request) and (2) Mr. Fraley's ability to exercise his right to terminate retroactive COBRA continuation coverage at the time of his choosing.  ECF No. 6-6; PageID.953.  And in a letter dated November 13, 2015, Ms. Kato, sent another letter indicating that GM had failed to respond to Mr. Fraley's appeal. ECF No. 6-6, PageID.1024.

In a letter dated January 11, 2016, Lynn Ward, on behalf of GM Plans Administration & Operations, responded to Ms. Kato's November 13, 2015, appeal letter, restating that upon retirement, effective January 1, 2014, Mr. Fraley was not eligible for company-paid healthcare benefits. ECF No. 6-6, PageID.1014.[7]  The letter did not address any of Mr. Fraley's concerns regarding retroactive COBRA coverage and correcting his

---

[6] The COBRA Fact Sheet received by Mr. Fraley states: "If you have a past due balance for coverage prior to COBRA, you must bring the payments up to date before COBRA coverage will become effective. You will be allowed to make your COBRA elections, but failure to make all contributions for coverage prior to COBRA will result in your COBRA elections becoming null and void."

[7] This letter mirrors the response GM provided to Mr. Fraley in its April 2, 2014 response (ECF 6-6, PageID.889) and June 25, 2014 response

eligibility date to reflect the date he *actually* stopped receiving company-paid health care coverage (March 1, 2014).

Mr. Fraley alleges GM repeatedly denied requests for documents related to his COBRA and other ERISA eligibility, which remain unfulfilled. ECF No. 68-1, PageID.2933.  Furthermore, Mr. Fraley contends GM failed to consider the various communications from his attorneys attempting to secure his health insurance coverage when "determining whether Fraley should be extended the requested ERISA benefits and that GM failed to give him proper notice that he would not receive COBRA coverage."  ECF No. 68, PageID.2934 (citing ECF No. 29-2, PageID.2472).  Lastly, Mr. Fraley alleges GM did not respond to his administrative appeal with respect to his request for retroactive COBRA coverage. *Id.* at 2934. (citing *Id.* at 2471).

Mr. Fraley filed claims with GM for company-paid Basic Life Insurance, company-paid Health Care Coverage, and COBRA continuation coverage.  ECF No. 50, PageID.2733.  He alleges that a final denial of these claims was issued on January 11, 2016, and he has exhausted his internal appeals. *Id.* at 2733-34.

## II.   Standard of Review

"Ordinarily, a plan administrator's denial-of-benefits decision is reviewed de novo." *Clemons v. Norton Healthcare Inc. Ret. Plan,* 890 F.3d

---

(ECF No. 6-6, 932), despite Mr. Fraley's appeal addressing different issues.

254, 264 (6th Cir. 2018) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). But if the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," we review such decisions under the arbitrary-and-capricious standard. *Id.* at 264 (quoting *Firestone*, 489 U.S. at 111, 115)). Here, GM is listed as the Plan Administrator. ECF No. 6-2, PageID.49. The Plan expressly states benefits shall be provided at the discretion of GM and GM has "discretionary authority to construe, interpret, apply, and administer the Program. . . " *Id.* "Any interpretation or determination made by the Program Administrator or the Carrier, pursuant to such discretionary authority, shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious." 2012 SPD. ECF No. 6-3, PageID.277. "The language of the SPD is sufficient to invoke the arbitrary and capricious standard of review." *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 743 (6th Cir. 2005) (citing *Firestone*, 489 U.S. at 115 (1989).

GM is the administrator and sponsor of the following plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA"): General Motors Salaried Retirement Program; General Motors Life and Disability Benefits Program for Salaried Employees; and General Motors Salaried Health Care Program. ECF No. 65, PageID.2884-85; ECF No. 6-2, PageID.49. Because the parties

agree that the Plan expressly grants the administrator discretionary authority to determine eligibility[8] (ECF No. 68-1, PageID.2935), the administrator's decision will be reviewed under "the highly deferential arbitrary and capricious standard of review." *Firestone*, 489 U.S. at 115; *Yeager v. Reliance Standard Life Ins. Co*., 88 F.3d 376, 380 (6th Cir.1996).

However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (citation, quotation marks, and brackets omitted). When applying that standard, we must determine whether the administrator's decision was "rational in light of the plan's provisions." *Bucks v. Reliance Standard Life Ins. Co*., 215 F.3d 1325 at *3 (6th Cir. 2000) (table) (quoting *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997)). The standard requires that the decision "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Id*.; *Killian*, 152 F.3d 514, 520 (6th Cir. 1998) (quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

---

[8] At the outset, Decedent's Motion for Summary Judgment establishes that the arbitrary and capricious standard applies to GM because the policy grants the Administrator discretionary authority over the Plan, (ECF No. 68-1, PageID.2935) but later contradicts this statement, stating "the parties agree that *de novo* review applies." ECF No. 68-1, PageID.2943.

The Estate has moved for Summary Judgment as a matter of law based upon the Administrative Record alone and Defendant has cross-moved for Judgment on the Record.[9]  As to the merits of the case, the district court should conduct a review based solely upon the Administrative Record and render findings of fact and conclusions of law. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir.1998).

## III.  Analysis

Section 1132 is the civil enforcement provision of ERISA which states, "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce

---

[9] In *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609 (6th Cir.1998), pursuant to a majority decision, the panel set forth "Suggested Guidelines" to adjudicate ERISA actions. The Sixth Circuit stated that the Rule 56 Summary Judgment procedure is "inapposite to the adjudication of an ERISA action" because of the Circuit's "precedents [which] preclude an ERISA action from being heard by the district court as a regular bench trial." *Wilkins*, 150 F.3d at 619. "[I]t makes little sense to deal with such an action by engaging a procedure designed solely to determine 'whether there is a genuine issue for trial.'" *Id*. The district court should use neither the summary judgment nor the bench trial procedures in deciding ERISA actions. *Id*. at 620; *accord Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 743 (6th Cir. 2005). The *Wilkins* court arrived at that conclusion in the context of a situation where the ERISA plan did not give its administrator discretionary authority to determine eligibility for benefits, and the district court was conducting a de novo review of the decision to deny benefits. *See, id*. at 618. In this case, however, the administrator is given such discretionary authority, and therefore the reasoning in *Wilkins* may not apply. *Killian,* 152 F.3d at 520. In any event, neither party in this appeal argues that ordinary summary judgment standard of review is inappropriate.  *See Bucks v. Reliance Standard Life Ins. Co*., 215 F.3d 1325 at *3 n.1 (6th Cir. 2000).

his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

"Where a district court determines that the plan administrator erroneously denied benefits, a district court 'may either award benefits to the claimant or remand to the plan administrator.'" *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) (internal citations omitted). The Sixth Circuit has established that "where the problem is with the integrity of [the plan's] decision-making process, rather than that [a claimant] was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Id.* at 373 (citing *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir.2006) (internal quotations removed)). Remand is also appropriate where the plan administrator merely "fail[ed] ... to explain adequately the grounds of [its] decision." *Id.* (quoting *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1288 (10th Cir.2002)).

"In contrast, where there is no evidence in the record to support a termination or denial of benefits an award of benefits is appropriate without remand to the plan administrator." *Id.* (internal citations and quotations omitted); *see Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 396 (6th Cir.2009) (ordering remand to the plan administrator after determining that the record did not "clearly establish" that the claimant was entitled to benefits).

13

The Estate claims Mr. Fraley is entitled to the following under ERISA:

Count I: GM Paid Life Insurance
Count II: GM Paid Health Insurance
Count III: COBRA Continuation Coverage
Count IV: Access to Requested Documents

For the reasons discussed below, the Court finds that GM erroneously denied Mr. Fraley benefits with respect to Count III only: the right to COBRA continuation coverage. Because the Record clearly establishes that Mr. Fraley is entitled to COBRA and GM's appeals process was procedurally defective in the handling of Mr. Fraley's claim, the Court will order GM to provide Mr. Fraley with the opportunity to retroactively reinstate COBRA. Accordingly, Counts I, II, and IV are dismissed. The Court addresses each count below.

### A.   Expressed Terms within the SPD and the Plan

Under ERISA, a Summary Plan Description ("SPD") must be "written in a manner calculated to be understood by the average plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Pearce v. Chrysler Grp., L.L.C. Pension Plan*, 615 F. App'x 342, 346 (6th Cir. 2015) (quoting 29 U.S.C. § 1022(a)). "The SPD must include, inter alia, 'the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; [and] circumstances which may result in

14

disqualification, ineligibility, or denial or loss of benefits.'" *Id*. (quoting 29 U.S.C. § 1022(b)) (emphasis added).  Where there is "a material conflict between the SPD and the Pension Plan," a plaintiff may have a claim for equitable relief under ERISA § 502(a)(3). *Id*.

The issue here is whether the SPD and the Plan both expressly and clearly inform GM employees that upon retirement, employees are no longer entitled to the company-paid, GM Active Salaried Healthcare Plan.  For the reasons explained below, the Court finds the plain language of each document adequately informed Mr. Fraley of his rights for health care benefits and that there is no discrepancy between the SPD and the Plan.

Mr. Fraley alleged GM made promises in the SPD providing health and life insurance coverage until age 65, even though the Plan document does not, and that the Plan "must be made to conform to the unambiguous promises that were made in the SPD."  ECF No. 68-1, PageID.2932 (citing *Wilkins*, 150 F.3d at 618).  Thus, the Estate argues that because there is a "material conflict between [the] SPD and the plan, the Court should permit a claim for equitable relief."[10]  ECF No. 68-1, PageID.2932.

In support of this argument, the Estate points to the 2012 SPD which states:

---

[10] In a previous Order, the Court has already established that a claim for equitable relief is inapplicable here, but will address the substantive portion of Mr. Fraley's argument. ECF No. 61, PageID.2862.

> If your length of service date with the Company is prior to January 1, 2001, GM will continue contributions towards your health care coverages while you remain totally and continuously disabled ***and you remain on an approved disability leave.***

ECF No. 68, PageID.2917 (citing ECF No. 6-5, PageID.755 (emphasis added)). The Estate also points out that the SPD "plainly provides for the termination of health care benefits in limited circumstances, which do not include disability retirement." *Id*.

Although the SPD terms highlighted do guarantee continued coverage to *employees* on disability leave, these terms do not apply to disabled *retirees*. Moreover, both the SPD and the Plan's terms are consistent with respect to the cessation of active salaried benefits, or company-paid health care, upon retirement:

> Effective January 1, 2010, retirees, surviving spouses, and their eligible dependents may be eligible for the GM Retired Salaried Health Care Plan, not the Basic and Standard Plans that were described in *If You Have Health Care Expenses*.

2012 SPD. ECF No. 6-5, PageID.819 (emphasis in original).

The health care coverage Mr. Fraley claimed he was entitled to is only available to active employees, not retirees.[11] And a quick review of the SPD Table of Contents makes it clear that there is an entire provision only applicable to retired employees. *See* **Section 7 When You Retire**,

---

[11] There is an exception for GM employees who retire from disability leave with a service date prior to 1993, including that the employee can remain enrolled in GM paid Basic Life coverage. ECF No. 6-3, PageID.370. Mr. Fraley does not qualify.

ECF No. 6-5, PageID.650.  Under Article III, Section 5 of the "General Motors Salaried Health Care Program" Plan, GM expressly states that upon retirement, the Company will continue to make contributions toward health care coverage for an enumerated list of eligible individuals (to which Mr. Fraley does not belong).  ECF No. 6-2, PageID.78-79. For those individuals who are not eligible for continued company-paid health coverage, the retiree health care plan—on a self-paid basis—is available. *Id*.  The SPD terms established in Section 7 also expressly state that there is continued retiree coverage available to eligible individuals, distinct from GM paid active salaried health coverage. ECF No. 6-5, PageID.819.

The Estate also attempts to rely on the legal theory of *contra proferentum*—or interpreting against the drafting party—claiming that the ambiguity in the Plan's health care provisions requires that the terms be read in favor of the beneficiary.  ECF No. 68-1, PageID.2943. (citing *Perez v. Aetna*, 150 F.3d 550, 557 n.7 (6th Cir. 1998) (en banc*) (*"ambiguous contract provisions in ERISA governed insurance contracts should be construed against the drafting party.")*; see also Guinn v. Gen. Motors, LLC*, 766 F. App'x 331, 335 n.2 (6th Cir. 2019)). However, *Perez* is inapposite the present matter.  First, while Mr. Fraley may have mistakenly understood that he would continue to be eligible for company-paid coverage as a retiree, the language of the SPD and the Plan are consistent and unambiguous.  Second, even if ambiguity existed within the Plan, the

Sixth Circuit has made clear that where *Firestone* deference is established as the standard of review, *contra proferentum* is inapplicable. *Clemons,* 890 F.3d at 265.  The parties have established that *Firestone* deference is the appropriate standard of review, so this argument fails.[12]

### 1)   Mr. Fraley is not entitled to continued GM-paid Employee Basic Life Insurance (Count I).

The 2011 Life Disability Plan Documents confirm that when an employee retires with a service date on or after 1993, the GM-paid Employee Basic Life Coverage ends the day prior to retirement, but the retiree can still apply for Optional Life coverage on a self-pay basis only. ECF No. 6-3, PageID.286. Only employees that retire from disability leave with a service date ***prior to 1993*** are eligible for company-paid Basic Life coverage. *Id.* at PageID.370.

While the SPD does provide life and disability coverage for employees who "have 10 or more years of participation at the commencement of [their] disability . . . at no cost . . . up to age 65," ECF No. 68, PageID.2917, the SPD makes clear that these benefits are not available for retirees. Only retired employees with a start date prior to 1993 are eligible for

---

[12] Decedent's brief appears to contradict itself more than halfway through its argument.  First, Decedent states that the "arbitrary and capricious" standard applies [ECF No. 68-1, PageID.2935], but later states that the parties have agreed that *de novo* review applies, which is inaccurate. ECF No. 68-1, PageID.2943.  The Court assumes this was an error and will avoid unnecessary analysis explaining why *de novo* review is not appropriate here.

continued GM-paid healthcare and effective January 1, 2010, only employees with service start dates between 1993 and 2001 are eligible for self-paid GM health and life insurance. Employees hired after 2001 are not eligible for any GM Retiree health care plan. 2012 SPD. ECF No. 6-5, PageID.819. Accordingly, Mr. Fraley is not eligible for continued company-paid life insurance.

### 2) Mr. Fraley is not entitled to continued GM-paid Employee Health Care (Count II).

The Estate also alleges Defendant failed to inform Mr. Fraley that upon retiring he would lose heath care coverage, citing to the 2012 SPD which states, **"If your length of service date with the Company is prior to January 1, 2001**, GM will continue contributions towards your health care coverages while you remain totally and continuously disabled and you remain on an approved disability leave." ECF No. 68, PageID.2917 (citing ECF No.6-5, PageID.755).

As stated above, the SPD makes clear that retirees with a service date prior to January 1, 2001, are only eligible for the self-paid Retiree Health Care Plan, "not the Basic and Standard Plans that were described in *If You Have Health Care Expenses*" ECF No. 6-5, PageID.819-20 (emphasis in original). There is no apparent discrepancy between the terms of the SPD and the Plan. In accordance with the SPD, GM provided Mr. Fraley medical coverage while he remained on disability leave, up until March 1, 2014, at which point, he became ineligible for the GM-paid

Employee Health Care Coverage plan because he effectively retired. Therefore, Mr. Fraley is not entitled to continued company-paid health insurance.

In an appeal letter dated March 10, 2014, Mr. Fraley also alleged he was "forced" to take a Total & Permanent Disability Retirement and challenged the termination of his GM Active Healthcare coverage, requesting to be reinstated in the Employee Health Plan and Basic Life Insurance.  ECF No. 48, PageID.2716-19.  However, Mr. Fraley voluntarily applied for retirement on October 17, 2013, seeking a commencement day of January 1, 2014, and then signed his retirement confirmation elections on February 11, 2014.  Application for Totally & Permanent Disability. ECF No. 48, 2705;[13] ECF No. 6-6, PageID.889.  At no point in the Record does Mr. Fraley state he was not provided with the SPD or Plan documents prior to his retirement. In fact, he states the opposite—that the documents were materially inconsistent—and the Court has rejected this argument.

### B.   Mr. Fraley's Right to COBRA (Count III)

In 1974, Congress enacted ERISA to regulate employee pension and welfare-benefit plans.  "COBRA is an amendment to ERISA which ensures that employees who lose coverage under their company's ERISA

---

[13] This document does not list the commencement date of his retirement, but both parties agree that January 1, 2014, was the intended effective date.

plan do not go without health insurance before they can find suitable replacement coverage." *Youngstown Aluminum Prods., Inc. v. Mid-West Benefit Servs., Inc.*, 91 F.3d 22, 26 (6th Cir. 1996). "Under COBRA, an employer that sponsors a group health insurance plan must offer employees and qualified beneficiaries the opportunity to continue their health insurance coverage, at group rates but at their own expense, for at least 18 months after the occurrence of a 'qualifying event' and notice to the affected employee." Russell G. Donaldson, Annotation, Construction and Application of ERISA Provisions Governing Continuation Coverage Under Group Health Plans (29 U.S.C.A. §§ 1161 et seq.), 126 A.L.R. Fed. 97, § 2(a) (2011) (footnote omitted). COBRA also "requires an employer to provide employees . . . with notification of their right to receive continued health insurance benefits within a specific period of time after the occurrence of the qualifying event." *Morehouse v. Steak N Shake*, 938 F.3d 814, 818–19 (6th Cir. 2019) (citing *Jordan v. Tyson Foods*, Inc., 257 F. App'x 972, 978 (6th Cir. 2007)).

The Estate alleges Mr. Fraley was denied his right to continued COBRA coverage by way of denial of due process and a "procedurally infirm decision by the Plan Administrator." ECF No. 68-1, PageID.2931. Specifically, the Estate claims GM intentionally prevented Mr. Fraley from exercising his COBRA rights by "backdating [his] retirement date and ignoring the date of the notice;" "removing it from the portion of their

website he could access; and "repeatedly purposely thwart[ing] continuation of [his] health care coverage" by refusing to respond to his administrative appeals and failing to address his concerns.  ECF No. 68-1, 2930-2931; 2935.

At issue is whether GM complied with its duties to adequately notify Mr. Fraley of his right to COBRA continuation coverage, whether GM erred in denying Mr. Fraley's right to elect COBRA continuation coverage, and whether Mr. Fraley is now entitled to retroactive reinstatement for COBRA continuation coverage along with any other damages.  For the reasons explained below, the Court finds in favor of Mr. Fraley.

### 1) GM's decision to refuse to correct Mr. Fraley's eligibility date for COBRA coverage was arbitrary and capricious.

In a letter dated February 26, 2014, Mr. Fraley received notice from GM that he had 60 days from the date his health care coverage ended (February 28, 2014) or the date of notice (March 11, 2014), whichever is later, to enroll in COBRA continuation coverage. *Id*. at 986.  The terms stated the deadline to enroll was May 5, 2014, (*id*. at 985), and the eligibility date to start receiving COBRA benefits was March 1, 2014, with a self-pay rate of $492.47, for the next 18 months.  *Id*. at 989.  Mr. Fraley alleged that after receiving the COBA notice letter, on March 31, 2014, he called Fidelity to enroll in COBRA continuation coverage and that "Hanna," a GM representative, confirmed via telephone that he would be

covered for COBRA continuation of health insurance effective March 1, 2014. ECF No. 6-6, PageID.895; 940-41; ECF No. 50, PageID.2739. However, Mr. Fraley stated that on April 3, Hanna notified him that he was no longer eligible for COBRA coverage because the 60-day deadline to enroll had expired because his qualifying event (disability retirement) occurred on January 1, 2014. ECF No. 6-6; PageID.954; ECF No. 50, PageID.2749. Although there is no record to support that Hanna called Mr. Fraley back on April 3, the Record does support that Mr. Fraley did attempt to call and enroll in COBRA on March 31 and was denied. ECF No. 48, PageID.2683.

Based upon the COBRA notice, Mr. Fraley understood his 60-day window to enroll in COBRA would begin on February 28, 2014, (the date his GM-paid health coverage *actually* ended), or March 11, 2014 (the date he alleged he received the notice). Moreover, the terms of the notice itself clearly stated he had at least until May 5, 2014, to enroll. Regardless of which deadline applied, Mr. Fraley called to elect COBRA continuation coverage well within the 60-day time frame provided within the terms of the COBRA notice.

But rather than comply with the dates listed in its notice to Mr. Fraley, GM recorded Mr. Fraley's health care coverage end-date as January 1, 2014, the effective date of his retirement. This is inconsistent with GM's decision to continue Mr. Fraley's GM-paid health care coverage until February 28, 2014. As a factual matter, Mr. Fraley's GM-paid

health care coverage did not end on January 1, 2014, it ended on February 28, 2014. This discrepancy resulted in Fidelity, the third-party provider for GM retiree benefits, also recording Mr. Fraley's COBRA eligibility date as January 1, 2014.

While an ordinary delay in paperwork would not be expected to undermine one's right to access healthcare, in this case the two-month delay between when Mr. Fraley retired and when he was actually identified as COBRA eligible by Fidelity, had detrimental consequences that neither party appears to have foreseen.  GM attributes the discrepancy in dates to Mr. Fraley's failure to sign and submit his Pension Election Confirmation Statement at the time he applied for disability retirement, contending that when Mr. Fraley signed the authorization form on February 11, 2014, "he requested a Disability Retirement with benefits to start retroactively on January 1, 2014." ECF No. 71, PageID. 3019.  But this assertion is not supported by the Record.  The benefits described in the Confirmation Statement relate to pension contributions Mr. Fraley would receive as a retired employee. ECF No. 48, PageID.2699-2702.  There is no reference to continued or terminated health care coverage benefits.

Although GM emphasizes the fact that Mr. Fraley received numerous documents related to his right to enroll in continued COBRA coverage or the Retiree Salaried Health Care Plan, this literature was not mailed until after Mr. Fraley signed the Confirmation Statement.  More importantly, even if it were implied through the Confirmation Statement

24

that Mr. Fraley was agreeing to retroactive health care coverage benefits, such an agreement would have triggered GM's duty to inform Mr. Fraley of the correct deadline for COBRA continuation coverage, which it failed to do.  GM received the Confirmation Statement on February 16, 2014, and mailed out a letter dated February 26, 2014, instructing Mr. Fraley to elect COBRA by the deadline of May 5, 2014.

Even assuming that Mr. Fraley's retirement commencement date (January 1, 2014) constituted the qualifying event under COBRA, despite the fact that Mr. Fraley continued to receive paid health care coverage, GM still had a duty to provide Mr. Fraley with the requisite 60-day period to enroll in COBRA from the day of notice. *See Burgess v. Adams Tool & Eng'g, Inc.*, 908 F. Supp. 473, 476 (W.D. Mich. 1995) (plaintiff's initial reduction in hours from full time employment constituted a qualifying event under COBRA, despite receiving continued group health coverage.)[14]  While Mr. Fraley may have been at fault for failing to submit his

---

[14] In *Burgess*, the court acknowledged that COBRA's statutory language "offers no explicit guidance in determining the relevant 'qualifying event' where, as here, the employee's termination or reduction in hours does not coincide with the 'loss of coverage' under the employer's plan." *Id*. at 476 (citations omitted).  Accordingly, the court adopted the reasoning of *Gaskell v. Harvard Co-op. Soc.,* 3 F.3d 495 (1st Cir.1993), "that Congress intended an employee's eighteen-month period of continuation coverage to commence with the event leading, under the terms of the plan, to loss of coverage, rather than upon the loss of coverage itself." *Gaskell*, 3 F.3d at 499 (emphasis in original).  *Burgess*, 908 F. Supp. 473, 476 (W.D. Mich. 1995).

Pension Confirmation Statement in a timely manner, GM accepted his late statement; it therefore should have abided by the dates it provided in the notice to Mr. Fraley, or at the very least permitted retroactive reinstatement of COBRA continuation coverage with a start date that aligned with the termination of his GM-paid health care coverage (March 1, 2014).

The arbitrary and capricious standard of review requires that GM's decision "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Bucks,* 215 F.3d at *3. Here, not only is there a "problem…with the integrity of [GM's] decision-making process," *Elliott*, 473 F.3d at 622 (internal quotations and citations omitted) but GM failed to provide any rationale as to why Mr. Fraley should be expected to know that his effective date for enrolling in COBRA would be different from the date provided in notice sent by GM.  GM also failed to properly address Mr. Fraley's inquiries regarding reinstatement of his COBRA continuation coverage after he was denied the right to enroll, giving rise to a major procedural defect as discussed below.  For these reasons, the Court finds GM's treatment of Mr. Fraley's claims to be arbitrary and capricious.

### 2) GM's conduct resulted in a procedurally defective appeals process of Mr. Fraley's claim.

Following the denial of Mr. Fraley's COBRA coverage, Attorney Stanley Dobry and later Attorney Mami Kato submitted several appeal

letters regarding Mr. Fraley's health care coverage rights. In the Spring of 2014, Mr. Dobry submitted two letters, listing numerous grievances with GM's benefits process, including the termination of Mr. Fraley's extended disability benefits. *See* ECF No. 48, PageID.2716; ECF No. 6-6, PageID.891-903. According to Mr. Dobry, Mr. Fraley's intent was to initiate COBRA benefits for health care coverage while he appealed the termination of his employee disability benefits. *Id*. at 896. GM promptly responded, informing Mr. Fraley that he was not entitled to continued GM-paid health care coverage or life insurance due to his effective disability retirement. ECF 6-6, PageID.889; 932. GM also provided Mr. Fraley with a list of requested SPD and Plan documents as requested. *Id*. at 931. As concluded above, the Court has found that Mr. Fraley was not entitled to continued GM-paid Health and Life Insurance and GM responded promptly to Mr. Dobry's inquiries, therefore, GM did not deny Mr. Fraley a right to due process with respect to his claims for extended disability leave benefits. However, the same cannot be said for Mr. Fraley's claim for continued COBRA violations.

The appeals process appears to have stalled for some time during which Mr. Fraley became eligible for Medicare later in 2014. ECF 6-6, PageID.1030. Then, in January of 2015, Mr. Fraley's claims were again taken up by Ms. Kato, who requested that GM provide Mr. Fraley with retroactive COBRA continuation coverage and any records related to Mr.

Fraley's attempt to elect or pay for COBRA coverage. ECF No. 6-6, PageID.941.

After about a month with no response from GM, Ms. Kato called and spoke with GM representative Josh Garcia, who informed her that "Mr. Fraley's COBRA coverage was terminated due to non-payment, and that he was eligible for a one-time retroactive reinstatement, but that it would require auto-pay and a lump-sum payment for all arrears from the effective date (January 1, 2014) through the present." *Id.* at 955; ECF No. 71, PageID.3025; *See also* ECF 6-6, PageID.867. Mr. Garcia also stated that to correct the eligibility date of Mr. Fraley's COBRA continuation coverage would require a "research request through the appeals process." *Id.*

In accordance with those instructions, Ms. Kato again submitted an appeal letter dated April 9, 2015, requesting that GM: (1) correct the effective date of Mr. Fraley's COBRA continuation coverage from January 1, 2014, to March 1, 2014, and (2) grant Mr. Fraley's ability to exercise his right to terminate retroactive COBRA continuation coverage at the time of his choosing. ECF No. 6-6; PageID.953.

The responses from GM to Mr. Fraley's numerous inquiries and appeals are at best evasive and at worst exasperatingly dismissive. Eight months later, in a letter dated January 11, 2016, Lynn Ward, on behalf of GM Plans Administration & Operations, responded to Ms. Kato's No-

vember 13, 2015, follow-up letter,[15] restating that upon retirement, effective January 1, 2014, Mr. Fraley was not eligible for company-paid healthcare benefits. ECF 6-6 PageID.1014.[16] The letter did not address any of Mr. Fraley's concerns regarding retroactive COBRA coverage and correcting the effective date to reflect the date he *actually* stopped receiving company-paid health care coverage.

Internal Fidelity communications also indicate an enrollment research request regarding Mr. Fraley's claim was not opened until March of 2016, almost a year after Ms. Kato submitted the appeal demanding a research request into the matter. ECF No. 48, PageID.2682-83. At no point does it appear that GM reached out to Fidelity to aid in resolving the manner, despite being at fault for providing conflicting "effective" dates for Mr. Fraley's retirement and elective health care coverage. In fact, it appears GM did the complete opposite, by failing to respond to Mr. Fraley's attorneys within reasonable time frames and providing little to no guidance on how to resolve what could have been a simple fix.

GM alleges it provided Mr. Fraley with the opportunity to reinstate COBRA coverage if he paid all of his delinquent payments from January 1, 2014, until present, yet in the same vein emphasizes the fact that it

---

[15] ECF No. 6-6, PageID.1024.

[16] This letter mirrors the response GM provided to Mr. Fraley in its April 2, 2014 response (ECF 6-6, PageID.889) and June 25, 2014 response (ECF No. 6-6, 932), despite Mr. Fraley's appeal addressing different issues.

continued to pay Mr. Fraley's health care coverage until March 1, 2014, to diminish his unequivocal right to choose the health coverage he prefers. Although the COBRA Fact Sheet states that to be eligible all past due payments must be up to date before COBRA becomes effective (ECF No. 6-6, PageID.867), at the time of notice, Mr. Fraley was not informed that he had a past due balance from any missing payments for January and February of 2014. In fact, it appears that had Mr. Fraley not requested COBRA coverage rather than the Retiree Salaried Health Care coverage, GM would not have requested Mr. Fraley repay for the continued health care coverage contribution. And yet in response to Mr. Fraley's request for retroactive COBRA coverage, GM states that Mr. Fraley must make payments starting from January 1, 2014 up until 2015, at which point he no longer was eligible for GM benefits because he qualified for Medicare. When Ms. Kato on behalf of Mr. Fraley attempted to clarify the period in which he would have to pay for retroactive coverage, and requested a retroactive end date, there was no response.

The Record discloses no bill from GM or Fidelity requesting that Mr. Fraley repay these contributions, nor does it contain any notification by either entity informing Mr. Fraley of the exact amount he would owe, and the manner in which it should be paid, to reinstate COBRA coverage. Instead, Mr. Fraley was told repeatedly via telephone that he must pay all delinquent premium payments before even receiving a resolution from the research request he was instructed to submit almost a year prior—to

which he never received a resolution.  During the October 27, 2021 hearing GM counsel stated that part of the challenge in addressing Mr. Fraley's COBRA inquiry arose from the fact that COBRA is managed by Fidelity, a third-party provider.  That excuse is unpersuasive. GM failed to adequately respond to Mr. Fraley's administrative appeals and explain the grounds for denial of his right to retroactively enroll in COBRA.  *See Shelby Cty.*, 581 F.3d at 373.  Accordingly, the Court finds that GM's appeals process was procedurally defective.  But because it is clear that Mr. Fraley's Estate is entitled to retroactive reinstatement of COBRA coverage, remanding to the Plan Administrator is unnecessary. *Shelby Cty.,* 581 F.3d at 373.

## C.    Penalty Claim for Document Production (Count IV)

The Estate also alleges GM had a duty to provide Mr. Fraley with requested claim documents and failed to do so. ECF No. 68-1, PageID.2937; ECF No. 50, PageID.2745 (citing 29 C.F.R. § 2560.503-1(h); 29 C.F.R. § 2560.503-1(m)(8)(I) and (ii); and SPD, p. 188.)

ERISA allows a statutory penalty of up to $110 per day for failure to provide requested documents. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1.  Mr. Fraley alleges GM repeatedly denied requests for documents related to his COBRA and other ERISA eligibility.  ECF No. 68-1, PageID.2933.

In a letter dated May 27, 2014, Mr. Fraley, by his attorney, made the following written request "demanding copies of all notices, correspondence, phone calls, and file history notes, documents, and memoranda, that may relate to any such claims," including "all audio file[s], transcripts, emails, instant messages, and other forms of communication, whatever their form may be." ECF No. 6-6, PageID.980-81.

Mr. Fraley also requested the following from the Plan Administrators under ERISA 29 U.S.C. §1024(b)(4):

> A copy of the Plan document;
> A copy of any applicable Summary Plan Descriptions;
> Any insurance agreements, policies, or amendments and any third party service agreements;
> Any brochures, benefits statements, or individual certificates that have been distributed to participants;
> A summary of all benefits paid to the participant and a written breakdown of all benefits that may be due and owing;
> Any benefit formula, calculation, procedure, worksheet, or similar document setting forth the manner in which eligibility or benefits are determined;
> Any other documents under which the Plan is administered."

*Id.* In response, GM Benefits Manager Elizabeth LaMarra emailed Mr. Dobry on June 10, 2014, the following documents: the "Salaried plan language for life insurance and disability coverages;" the "Salaried Summary Plan Description that pertains to all benefit programs;" the "Salaried Retirement Program language;" and the "Salaried Health Care Program language." ECF No. 6-6, PageID.931. Accordingly, GM contends it

timely provided Mr. Fraley with all requested plan and SPD documents. Since GM complied with § 1024 by timely providing the requested plan and SPD documents, ERISA § 1024 was not violated and no penalty is supported.  ECF No. 71, PageID.3037.

"Most of the federal circuit courts agree that a violation of § 503 regulations 'does not trigger monetary sanctions under § 502(c).'" *Zack v. McLaren Health Advantage, Inc.*, 340 F. Supp. 3d 648, 669 (E.D. Mich. 2018) (citing *Medina v. Met Life Ins. Co.*, 588 F.3d 41, 48 (1st Cir. 2009); accord *VanderKlok v. Provident Life and Acc. Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992).  Under ERISA § 1024(b)(4), the documents an administrator is obligated to turn over are: "the latest updated summary plan description, plan description, and the last annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); *Id.* Claim file documents are not required to be produced.

In any event, this Court previously ruled that that there was no support for Mr. Fraley's allegations of missing claim file records.  ECF No. 13, PageID.1072-73 ("Plaintiff has not presented any evidence to suggest that such documents or materials exist in this case that were improperly omitted from the administrative record filed with the Court.").  Accordingly, Mr. Fraley cannot establish that a penalty claim is proper against GM.

### D.   Additional Claims

On June 1, 2020, the Court issued an Order allowing Mr. Fraley to file an Amended Complaint that included his original four claims with additional facts for three of those claims.  ECF No. 46.  The Court ruled no additional legal claims could be added since none were legally supported and would be futile if filed, including claims for breach of fiduciary duty, requests for equitable remedies, ERISA Section 502(a)(3) claims, claims for alleged adverse employment actions, and claims under ERISA Section 510. *Id.*  To the extent the Estate continues to press any claim beyond those authorized by the Court, such claims are denied.

## IV.   Damages

It is well established that extracontractual compensatory and punitive damages are not available under ERISA.  *Vargas v. Child Dev. Council of Franklin Cty., Inc.*, 269 F. Supp. 2d 954, 956–57 (S.D. Ohio 2003) (citing cases); *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985) (no extracontractual damages caused by improper or untimely processing of benefit claims available under ERISA); *Allinder v. Inter–City Products Corp.* (USA), 152 F.3d 544 (6th Cir.1998) (no compensatory or punitive damages under § 1132(a)(3)); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689 (6th Cir.1989) (no claims for extracontractual compensatory or punitive damages under ERISA).

34

However, a qualified beneficiary is not necessarily limited to recovering only medical benefits. COBRA's tax code provisions indicate that an employer must "correct" any COBRA violation to mitigate or avoid an excise tax. To properly correct a COBRA violation, an employer must undo the violation, and the qualified beneficiary may need to be provided with make-whole relief. This means that the qualified beneficiary must be restored to a financial position as good as the position he or she would have been in had no violation occurred. *See* Internal Revenue Code Sections 4980B(b) and 4980(g)(4); §1620.

Plaintiff has requested "full and adequate 'make whole' relief, *inter alia*: prejudgment and post judgment interest, disgorgement of profits, payment of lost benefits including health insurances and life insurance, equitable surcharge, attorney fees, and statutory penalties, reformation, and all applicable equitable remedies to the extent the law requires." ECF No. 68, PageID.2921.

Upon careful review of the Record, the Court finds that Mr. Fraley may be entitled to retroactive reinstatement of COBRA continuation coverage, attorney fees, and statutory penalties.

## A.   Retroactive COBRA Continuation Coverage

In response to Mr. Fraley's appeal for retroactive COBRA, GM offered to reinstate COBRA coverage if Mr. Fraley paid all delinquent payments owed up until present. To clarify, Ms. Kato inquired as to whether Mr. Fraley was expected to pay for coverage from January 2014 up until

February 2015, despite Mr. Fraley receiving Medicare coverage.  GM failed to answer this question.  Based on the evidence in the Record, and in the interest of justice, the Court finds that Mr. Fraley is only liable for repayment of COBRA monthly premiums at a rate of $492.47, from March 1, 2014, until the date he became Medicare eligible.

Consequently, if Mr. Fraley's Estate pays any premiums owed for the months in which he did not have coverage, any medical expenses he incurred that would have been covered by COBRA will be paid and he will not incur a loss.  If the Estate does not pay the premiums for those months, that would constitute a failure to mitigate damages and would make the Estate ineligible to recover the medical expenses as actual damages. *See Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 907 (W.D. Mich. 2002) (citing *Hamilton v. Mecca Inc.,* 930 F.Supp. 1540, 1555 (S.D.Ga.1996) (stating that a plaintiff in a COBRA case has a duty to mitigate damages provided that the damages can be avoided without undue risk, burden or humiliation).  "In either case, then, the offer prevents [the Estate's] recovery of the medical expenses as actual damages." *Id*.

Because the Record does not indicate the actual date Mr. Fraley became Medicare eligible, the Court will permit the Estate to file documentation indicating when Mr. Fraley began receiving Medicare benefits within 21 days of the date of this Order.

### B.   Pre-judgment Interest

Pre-judgment interest in an ERISA action may be awarded at the Court's discretion "in accordance with general equitable principles." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 685–86 (6th Cir. 2013) (quoting *Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 616 (6th Cir. 1998)).   The determination of the pre-judgment interest rate for an ERISA benefits award similarly lies within the Court's discretion. *See id*. at 619. The interest award must not be punitive in nature, but rather should compensate for the lost use of money improperly withheld. *See id*. at 618.   A proper determination of pre-judgment interest involves a consideration of various case-specific factors and competing interests to achieve a just result.   *Schumacher*, 711 F.3d at 686 (6th Cir. 2013).

Here, because Mr. Fraley is not entitled to any additional benefits outside of his medical care coverage, pre-judgment interest is not appropriate.

### C.   Post-judgment Interest

For the same reasons discussed above, Mr. Fraley is not entitled to post-judgment interest.

### D.   Attorney Fees

Mr. Fraley additionally seeks relief under 29 U.S.C. § 1132(g)(1). ERISA allows courts to award attorney fees to either party, so long as that party achieved "some success on the merits." *Guest-Marcotte v. Life*

*Ins. Co. of North America*, 768 Fed. Appx. 357, 360 (6th Cir. 2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252, (2010)). However, because the issue of attorney fees has not been fully briefed, the Court will permit Mr. Fraley to submit a memorandum addressing the issue and including supporting documentation for any request for fees within 21 days of the date of this Order; GM may respond within 14 days thereafter.

### E.    Statutory Penalties

"Civil penalties in an amount of up to One Hundred Dollars ($100) per day may be assessed against the plan administrator for failure to comply with COBRA's notification requirements. 29 U.S.C. § 1132(c)(1). Because GM did not provide the notice required by § 1166(a)(1), they violated COBRA's notice requirements, and the Court must determine whether penalties under § 1132(c) are appropriate in this case." *Burgess,* 908 F. Supp. at 478; *Vargas,* 269 F. Supp. 2d at 957.

The notification requirements of COBRA are clear: an employer must notify the administrator of the group health care plan within 30 days of an employee's qualifying event. 29 U.S.C. § 1166(a)(2).  The administrator has 14 days from notification to provide notice to the qualified beneficiary of the right to elect continuation coverage. § 1166(c). As the employer and plan administrator, GM had 44 days from the date of Mr. Fraley's qualifying event to notify him of his right to elect COBRA.

38

Applying Mr. Fraley's intended retirement date as the qualifying event, GM had 44 days from January 1, 2014, or, until February 13, 2014, to notify Mr. Fraley of his right to elect COBRA.  GM did not mail the COBRA notice letter to Mr. Fraley until February 26, 2014.  ECF No. 6-6, PageID.985.  Therefore, GM was in violation of its obligation for a period of 13 days, from February 13 through February 26.  Applying § 1132(c)(1)'s $100 per-day penalty to this failure of notification, the total penalty would be $1300. Of course, if GM had merely failed to timely notify Mr. Fraley of his right to elect COBRA, but nevertheless granted him the 60-day window to elect COBRA while continuing his health care coverage, Mr. Fraley would not have a claim. But that is not the case here. Instead, GM not only provided Mr. Fraley with delayed notice, but also ignored the election period provided in Mr. Fraley's notice.

"The assessment of statutory damages is discretionary and depends in large part on an assessment of pertinent factors including employer bad faith and prejudice to the employee." *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 908–09 (W.D. Mich. 2002) (citing *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir.1994); *Burgess v. Adams Tool & Eng'g, Inc.*, 908 F. Supp. 473, 478–79 (W.D.Mich.1995)). "The whole intent of this discretion is, while avoiding Draconian justice, to construct a remedy which regards the violation with sufficient seriousness that it will not be repeated." *Id.*

39

Here, the Record shows that GM committed a statutory violation due to its repeated failure to acknowledge and correct a clerical error that could have easily been resolved.  In the interest of justice and with the hopes of preventing resolvable errors such as these from causing unnecessary litigation and undermining future beneficiaries' rights to access health care, the Court finds that GM is liable to pay a statutory penalty of $1300—$100 per each day that the notification was late—to Mr. Fraley's Estate.

## V.    Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Record is **GRANTED** as to Counts I, II, and IV, and **DENIED** as to Count III.

Plaintiff's Motion for Summary Judgment is **GRANTED** as to Count III in that the Court finds that Plaintiff was entitled to elect CO-BRA continuation coverage during the months between the termination of Plaintiff's company-paid health insurance and the commencement of his Medicare coverage.  For the reasons set forth above, Defendant is liable to pay a civil penalty of $1300, which shall be paid by Defendant to Plaintiff's Estate immediately.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to pursue its right to retroactive reinstatement of COBRA continuation coverage for the above period, Plaintiff must submit to the Court a memorandum including documentation showing (1) the date when Plaintiff's Medicare

coverage commenced and (2) proof of payment of COBRA premiums due from March 1, 2014, until the commencement of his Medicare coverage **within 21 days of the date of this Order, and that Defendant may respond within 14 days thereafter**.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to request an award of attorney fees, such request, along with documentation in support, must be filed **within 21 days of the date of this Order, and that Defendant may respond within 14 days thereafter.**

As all of the outstanding claims in this matter have been fully resolved, this case is hereby **DISMISSED** with prejudice.  The Court will retain jurisdiction to consider any request for reasonable attorney's fees or as may be necessary to enforce Plaintiff's right to retroactive reinstatement of COBRA continuation coverage.

**IT IS SO ORDERED.**

Dated:  January 26, 2022

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE